[Civ. No. 49987. First Dist., Div. Three. Aug. 11, 1981.]

In re the Marriage of DONNA M. and J. MICHAEL LEONARD.
J. MICHAEL LEONARD, Respondent, v.
DONNA M. LEONARD, Appellant.

444

446

COUNSEL

Eugenia MacGowan for Appellant.

Susan C. McCune for Respondent.

## Opinion

**BARRY-DEAL, J.**—Donna Leonard, a nonresident of California, appeals from the order denying her motion to quash service of summons for lack of jurisdiction and from the order granting custody of their child to her former husband, Michael Leonard. She contends that in personam jurisdiction over her is a prerequisite to the court's rendition of an order modifying the initial Georgia child custody order and that the Uniform Child Custody Jurisdiction Act (UCCJA)[1] does not dispense with the due process requirement of personal jurisdiction. In the alternative, she seeks dismissal of the child custody modification proceedings on the grounds (1) that under the UCCJA California should not assert jurisdiction to modify the Georgia decree; (2) that California must decline jurisdiction because of respondent's improper conduct; or (3) that California is an inconvenient forum.

We do not agree with appellant's contentions, and we affirm the judgment.

### Background[2]

Appellant (Donna) and respondent (Michael) were married in Georgia in 1970 and resided in DeKalb County, Georgia, during their marriage. Their daughter, Emily Heather Leonard, was born in Georgia on July 19, 1971. The parties were divorced in September 1974 in DeKalb County, and by agreement Donna was awarded custody of Heather, with reasonable visitation rights reserved to Michael. In 1975, Michael moved to California and established his residence in San Mateo County; Donna remained in DeKalb County and has never resided in California.

---

[1]The Uniform Child Custody Jurisdiction Act was approved by the National Conference of Commissioners on Uniform State Laws, and the American Bar Association, in 1968. The act, with the commissioners' explanatory notes, state variations, and annotations is contained in 9 Uniform Laws Annotated (West 1979). California's UCCJA became effective on January 1, 1974, and is contained in Civil Code sections 5150 to 5174. Georgia's UCCJA became effective on January 1, 1979, and is contained in the Georgia Code sections 74-501 to 74-525.

[2]The facts are summarized from respondent's petition for modification of the custody order and his declaration in opposition to the motion to quash and from appellant's affidavit in support of her motion to quash which are contained in the clerk's transcript on appeal. Neither the preliminary nor full custody report are part of the record on appeal.

On June 3, 1978, Heather journeyed to California to visit her father. With appellant's permission, Heather's stay with him was extended through the 1978/1979 school year. Donna claims that it was understood that Heather would return to Georgia at the end of the school year. Michael claims that at the time of the agreement, Donna wished to be relieved of the custody obligation for an indeterminate period of time because of her personal problems and that it was never agreed that Heather should be returned in June of 1979.

Donna alleges that when she contacted Michael in the spring of 1979 regarding Heather's return, he informed her that Heather was not returning to Georgia. Michael alleges that the improvement in Heather during the year impelled him to seek a change of custody and that he telephoned Donna immediately after filing modification proceedings on May 30, 1979, to advise her of the California action and of his reasons for it; further, he advised her that by June 14, 1979, she could expect service of the moving papers. Donna flew to California on June 13, intercepted Heather on her way to school, allegedly asked if Heather wished to return with her to Georgia, and upon receiving an affirmative answer, took Heather then and there back to Georgia.

On June 14, 1979, Donna was served in Georgia with the summons, petition for modification of custody and order to show cause issued by the San Mateo County Superior Court. The order to show cause contained an ex parte temporary order prohibiting either party from removing Heather from California without the prior order of the court or written consent of petitioner (Michael). The next day (June 15) Michael appeared at Donna's home in Georgia, approached Heather playing in front of the house, and returned with her to California.

Thereafter, Donna appeared specially in the California proceedings to quash service of summons for lack of personal jurisdiction or to have the action dismissed for lack of jurisdiction under the UCCJA to modify the Georgia decree. A preliminary probation report submitted by the San Mateo Juvenile Probation Department indicated that at the time of the first hearing on July 30, 1979, Donna was living with her parents in Clearwater, Florida, although she apparently had plans to return to Georgia. Donna's motion to quash was denied, Michael was granted temporary custody of Heather, and the matter was referred to the probation department for a full custody investigation and report. The court found that Donna had received adequate notice and an opportunity to

appear and that California should assume jurisdiction under Civil Code section 5152, subdivision (1)(b). Donna did not participate in the custody investigation and report.

Donna filed a motion for reconsideration on December 24, 1979, which was denied as were her subsequent petitions for writ of certiorari/mandamus/prohibition in this court and in the California Supreme Court.

On March 14, 1980, the court found that Donna had received adequate notice and an opportunity to appear and that the court had jurisdiction pursuant to the requirements of Civil Code section 5152 (UCCJA, §. 3).[3] Having considered the probation report and having interviewed the child and listened to the testimony of respondent, the court modified the Georgia custody order by awarding custody to Michael and reasonable visitation rights to Donna in California in the presence of a neutral third party, without prejudice to her seeking additional visitation rights after participating in the probation department investigation. The record does not reflect whether Donna has availed herself of these visitation rights.

### In Personam Jurisdiction

Appellant contends that since the San Mateo County Superior Court could not obtain jurisdiction over her person, it was without power to modify the Georgia custody decree. Both parties agree that under the UCCJA the California court met the "home state" requirement for jurisdiction to modify the decree based on Heather's residence with her father in this state for over six months before respondent's petition to modify custody was filed. (See Civ. Code, §§ 5152, subd. (1)(a) and 5151, subd. (5); UCCJA, §§ 3 and 2.) Although appellant does not dispute respondent's compliance with notice requirements under the act (Civ. Code, § 5154; UCCJA, § 5), she nevertheless asserts that due process[4] prohibits a determination of her parental rights.

---

[3]For convenience in reading the various commentaries, as well as sister-state decisions, parallel cites to the sections of the Model UCCJA have been included throughout.

[4]Section 1 of the Fourteenth Amendment to the United States Constitution provides in part: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

By the summer of 1980, 44 states had adopted the provisions of the UCCJA in some substantial form. (Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA* (1981) 14 Fam. L. Q. 203 (1981, ABA section of Fam. Law).) The uniform act is primarily designed to eliminate conflicting decrees resulting from concurrent jurisdiction in more than one state and was in large part prompted by a growing concern with the escalation of "seize and run" tactics and parental child abductions. (See Civ. Code, § 5150; UCCJA, § 1; Uniform Child Custody Jurisdiction Act (Comrs.' Prefatory Note), reprinted in 9 U. Laws Ann. (West 1979) pp. 111-114; Bodenheimer & Neeley-Kvarme, *Jurisdiction Over Child Custody and Adoption After Shaffer and Kulko* (1979) 12 U.C. Davis L.Rev. 229, 246.)

The jurisdictional requirements of the uniform act focus on the contacts of the child with the forum state rather than the domicile or presence of the child and personal jurisdiction over the parties. (Compare Civ. Code, § 5152; UCCJA, § 3, with Rest.2d Conflict of Laws, § 79; *Sampsell* v. *Superior Court* (1948) 32 Cal.2d 763, 779, 781 [197 P.2d 739].)

The adoption of the UCCJA in California in 1973 has prompted a number of California decisions which address various issues in the interpretation and practical application of the act. (See, e.g., *In re Marriage of Hopson* (1980) 110 Cal.App.3d 884 [168 Cal.Rptr. 345]; *Allison* v. *Superior Court* (1979) 99 Cal.App.3d 993 [160 Cal.Rptr. 309]; *Palm* v. *Superior Court* (1979) 97 Cal.App.3d 456 [158 Cal.Rptr. 786]; *In re Marriage of Ben-Yehoshua* (1979) 91 Cal.App.3d 259 [154 Cal.Rptr. 80]; and the chart in Adams & Sevitch, 1979 Cal. Family Law Rep. (CFLR) p. 1006, analyzing nine prior cases.) These cases mainly concern problems relating to subject matter jurisdiction, forum non conveniens and the "unclean hands" doctrine. None consider whether due process requires personal jurisdiction over both parties. The cases that have mentioned the issue agree that the act makes no provision for personal jurisdiction. (See *Smith* v. *Superior Court* (1977) 68 Cal.App.3d 457, 461 [137 Cal.Rptr. 348]; *In re Marriage of Ben-Yehoshua, supra,* at p. 264; *In re Marriage of Hopson, supra,* at p. 891.)

### United States Supreme Court Decisions[5]

[5]A petition for writ of certiorari was dismissed by the United States Supreme Court on May 18, 1981, in *Webb* v. *Webb* (1981) 451 U.S. 493 [68 L.Ed.2d 392, 101 S.Ct. 1889] on the ground that the federal full-faith-and-credit claim had not been raised or

In challenging jurisdiction, appellant places reliance chiefly on one pre-UCCJA United States Supreme Court custody case and one recent child support case: *May* v. *Anderson* (1953) 345 U.S. 528 [97 L.Ed. 1221, 73 S.Ct. 840] and *Kulko* v. *Superior Court* (1978) 436 U.S. 84 [56 L.Ed.2d 132, 98 S.Ct. 1690].

*May* is cited by appellant as holding that personal jurisdiction is required for a binding custody decree. In *May*, the parties were married and lived in Wisconsin. Marital problems developed and the mother went to Ohio with the three children to consider her future course. She opted to remain in Ohio and unilaterally decided not to return the children to the father in Wisconsin as previously agreed. Father filed for divorce in Wisconsin and personally served mother in Ohio; she did not appear. The Wisconsin court granted the divorce and awarded custody of the children to father. The children were physically retrieved by father, but four years later, following a visit with mother, she once again refused to return them. Father sought a writ of habeas corpus in Ohio asking for their return.

The Ohio court decided that the full faith and credit clause of the United States Constitution[6] required recognition of the Wisconsin decree and granted the writ. The United States Supreme Court reversed, holding that since the Wisconsin decree was obtained without personal jurisdiction over the mother, the Ohio court was not obliged to give it full faith and credit.

Justice Burton's majority opinion has been much criticized for his concern with "rights far more precious to appellant than property rights" (*id.*, at p. 533 [97 L.Ed. at p. 1226]), in apparent disregard of the welfare of the human objects in whom those parental rights attach. (See Bodenheimer & Neeley-Kvarme, *supra*, at pp. 248-252; Clark, The Law of Domestic Relations in the United States (West 1968) pp. 323-326; see also Ratner, *Procedural Due Process and Jurisdiction to Adjudicate*: (a) *Effective-Litigation Values* v. *The Territorial Im-*

---

ruled on in the state court (Ga.). One question was raised: "Does Article IV, § 1 of the United States Constitution, demand that Georgia ... give full faith and credit to a Florida decree rendered immediately prior to Georgia's acceptance of unqualified jurisdiction." (See 1981 CFLR 1578-1581 for discussion.)

[6]The United States Constitution, article IV, section 1 provides: "Full faith and credit shall be given in each State to the public acts, records, and judicial proceedings of every other State. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."

*perative* (b) *The Uniform Child Custody Jurisdiction Act* (1980) 75 Nw.U. L.Rev. 363, 386, and commentators cited therein, for general criticism.)[7]

Justice Frankfurter, in a concurring opinion, noted that although Ohio was not required to give full faith and credit to the Wisconsin order, the due process clause did not prohibit Ohio from recognizing it "as a matter of local law" or comity. (*Id.*, at pp. 535-536 [97 L.Ed. at p. 1228].) "The Restatement (2d) of Conflict of Laws accepts the Frankfurter interpretation of *May* as authoritative [§ 79, comment (c) (1971)]. Under this view, a state may, as a matter of local law, recognize the custody disposition made by another state, regardless of lack of personal jurisdiction." (Bodenheimer & Neeley-Kvarme, *supra*, at p. 251; accord *Yearta* v. *Scroggins* (1980) 254 Ga. 831 [268 S.E.2d 151, 153].)

Although the United States Supreme Court in *May* allowed collateral attack on custody orders for lack of personal service, because of their modifiability it has not otherwise extended the full faith and credit clause to them. (See Bodenheimer, *Progress Under the Uniform Child Custody Jurisdiction Act and Remaining Problems: Punitive Decrees, Joint Custody and Excessive Modifications* (1977) 65 Cal.L.Rev. 978, 981, and cases cited therein.) Because it has been left to the states to develop a body of child custody conflicts law based on comity (*id.*, at p. 981; Clark, *supra*, at pp. 324-326), *May* v. *Anderson* has been of relatively slight importance. (Clark, *supra*, at p. 324.) Indeed, the UCCJA commissioners in commenting on section 12 of the act (Civ. Code, § 5161), relating to the binding force of a custody decree, noted that the act did not require technical personal jurisdiction and that section 12 was not "at variance with May v. Anderson . . . which relates to interstate recognition rather than in-state validity of custody decrees." (9 U. Laws Ann., *supra*, at p. 150.)

---

[7]Many critics have lauded Justice Jackson's dissenting opinion in which he stated in part: "Custody is viewed not with the idea of adjudicating rights *in* the children, as if they were chattels, but rather with the idea of making the best disposition possible for the welfare of the children. To speak of a court's 'cutting off' a mother's right to custody of her children, as if it raised problems similar to those involved in 'cutting off' her rights in a plot of ground, is to obliterate these obvious distinctions. Personal jurisdiction of all parties to be affected by a proceeding is highly desirable, to make certain that they have had valid notice and opportunity to be heard. But the assumption that it overrides all other considerations and in its absence a state is constitutionally impotent to resolve questions of custody flies in the face of our own cases. . . ." (*May* v. *Anderson*, *supra*, 345 U.S. 528, 541 [97 L.Ed. 1221, 1231, 73 S.Ct. 840], italics in original.)

Two recent United States Supreme Court decisions, *Kulko* v. *Superior Court, supra,* 436 U.S. 84, and *Shaffer* v. *Heitner* (1977) 433 U.S. 186 [53 L.Ed.2d 683, 97 S.Ct. 2569], have dictated a "reconsideration of jurisdictional assumptions underlying child custody and adoption proceedings...." (Bodenheimer & Neeley-Kvarme, *supra,* at p. 229.)

In *Kulko,* on facts substantially similar to those of the instant case, the court held that due process required personal jurisdiction over the party on whom a child support obligation was to be imposed. The California Supreme Court had found sufficient contacts to constitute personal jurisdiction solely on the New York father's acquiescence in allowing his daughter to live with her mother in California for the greater part of the year. The United States Supreme Court held that the "minimum contacts" standard of *Internat. Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057] was applicable and found that the father's contacts with California were "too tenuous under California's long-arm statute and the Constitution to establish the minimum nexus required under *Shaffer* and *International Shoe* for the imposition of financial obligations in a domestic relations case." (See Bodenheimer & Neeley-Kvarme, *supra,* at p. 231.) The court noted that jurisdiction over custody had not been challenged. (*Kulko, supra,* at p. 88 [56 L.Ed.2d at pp. 138-139].)

If the holding in *Kulko* that personal jurisdiction is required for a binding child support order is extended to include custody orders, the California court does not have such jurisdiction over appellant in this case. As in *Kulko,* her only connection with this state is the presence of her daughter within its borders. *Kulko,* however, made it clear that the *Shaffer* principles apply to a family law case. (*Kulko, supra,* at pp. 97, 100-101 [56 L.Ed.2d at pp. 144-145, 146-147].)

In *Shaffer,* the Supreme Court declared that thereafter it would measure all jurisdictional challenges by the "minimum contacts" standard formulated in *Internat. Shoe Co. Shaffer* held that the mere presence of a person's property, traditionally a basis for in rem jurisdiction, was not a sufficient contact and would no longer suffice as a basis for jurisdiction. (*Id.,* at p. 213 [53 L.Ed.2d at pp. 703-704].)

*Shaffer* acknowledged some exceptions to the *International Shoe* standard, including some "status" determinations. (*Id.,* at p. 208, fn. 30 [53 L.Ed.2d at p. 700].) Status has been defined as a "'relationship between two persons, which is not temporary in its nature, is not

terminable at the mere will of either and with which the State is concerned. Marriage is a status . . . and so too is the relationship of parent and child, whether natural or adoptive.' Accordingly the Restatement Second of Conflict of Laws [§§ 69-79 (1971)] and legal literature classify child custody proceedings and adoptions as status proceedings." (Bodenheimer & Neely-Kvarme, *supra*, at p. 240 and authorities cited therein; see also *Titus* v. *Superior Court* (1972) 23 Cal.App.3d 792, 797 [100 Cal.Rptr. 477].) In a child custody proceeding, however, the concept of "status" implies more than the state's concern with the relationship of the parties. It encompasses the right and obligation of the state in its parens patriae role to consider the welfare of the child subject to its jurisdiction and to make a determination that is in the best interests of the child.

One further case deserves mention. In *Stanley* v. *Illinois* (1972) 405 U.S. 645 [31 L.Ed.2d 551, 92 S.Ct. 1208], the court decided that due process requires notice and an opportunity to be heard in order to terminate the parental rights of an unwed father. (*Id.*, at p. 649 [31 L.Ed.2d at p. 557].) The court also seems to suggest that personal jurisdiction over the unwed father is not required. (*Id.*, at p. 657, fn. 9 [31 L.Ed.2d at p. 562].) *Stanley* arises in the context of a parental termination or abandonment proceeding, a circumstance summoning up the traditional role of the state as *parens patriae*. By analogy, however, there are many custody proceedings where an absent parent cannot be located and a requirement of personal jurisdiction would prevent a valid custody order. (See Bodenheimer & Neeley-Kvarme, *supra*, at pp. 241-243.)

## Some Decisions of Other States

Only eight states had enacted the UCCJA by 1977, and thus there is a paucity of decisions on the issue confronting us.

In *Yearta* v. *Scroggins, supra*, 268 S.E.2d 151, the Supreme Court of Georgia in 1980 addressed a problem similar to that presented here. In *Yearta*, the parents were divorced in Missouri and custody was awarded to mother who moved with the children to Georgia. During an illness, she returned the children to father in Missouri. He later filed a motion in Missouri for a change of custody and served mother in Georgia by certified mail. Mother did not answer, and father was granted custody. When mother refused to return the children after a summer visit, father

petitioned in Georgia for a writ of habeas corpus, which mother defended on the ground that the Missouri custody decree was void for lack of personal jurisdiction.

In a well-reasoned opinion, the Georgia court stated that without personal jurisdiction the Missouri decree was not entitled to full faith and credit. The court noted that prior to enactment in that state of the UCCJA, Georgia would likewise not have recognized the decree under principles of comity. The Legislature, however, had enacted a form of personal jurisdiction through adoption of the notice provisions of the uniform act requiring service upon the nonresident party either in person, by mail or by publication. "It is, therefore, apparent that the General Assembly has mandated that the public policy of this State is to recognize, under principles of comity, child custody decrees where there is no personal jurisdiction that would satisfy the full faith and credit clause of our Federal Constitution." (*Id.*, at p. 153.) Thus, the Missouri decree was entitled to recognition through comity, and the children were returned to the father. (Accord, *Burton* v. *Bishop* (1980) 246 Ga. 153 [269 S.E.2d 417].)

In *Goldfarb* v. *Goldfarb* (1980) 246 Ga. 24 [268 S.E.2d 648], the Georgia Supreme Court upheld the constitutionality of section 3 of the UCCJA (Civ. Code, § 5152) as a basis for jurisdiction in a child custody proceeding and held that the father's due process rights were not violated for lack of personal jurisdiction over him when he had full notice and the court had subject matter jurisdiction under the act.

Georgia is, of course, the initial decree state in the instant case, which we discuss below.

The Ohio Supreme Court came to the opposite conclusion when presented with the issue of personal jurisdiction. In *Pasqualone* v. *Pasqualone* (1980) 63 Ohio State 2d 96 [406 N.E.2d 1121, 17 Ohio Ops.3d 58] an Ohio couple by a written separation agreement provided that mother could take the child to Indiana where mother's parents resided, but she was not to remove the child from the two-state area of Ohio and Indiana. Mother, breaching the agreement, moved to Illinois and filed for divorce and custody. Father, who had the child for a visit, filed his own action in Ohio where he had continued to reside. The Illinois court granted a divorce and gave custody of the child to mother.

The Ohio court refused to recognize the Illinois judgment, denied mother's petition for writ of habeas corpus, and awarded custody to father.[8]

The Ohio court, following *May* v. *Anderson, supra,* 345 U.S. 528, required personal jurisdiction for a determination of custodial rights. (*Pasqualone* v. *Pasqualone, supra,* 406 N.E.2d at pp. 1125-1126.) The court rejected arguments that notice and an opportunity to be heard were sufficient and that such a determination was encompassed within the *Shaffer* status exception. The Ohio court drew "an unconvincing distinction between divorce and custody actions, citing *May* in analogizing custody determinations with actions for alimony, which, of course, are actions for a monetary award." (Neeley-Kvarme, *Long Distance Duels Over Children* (1981) 3 Fam. Advocate 2, 45 (1981 ABA Fam. Law section).)[9]

The Ohio court appears to have left the door ajar for a possible modification of their holding in *Pasqualone.* "Appellant also claims that the courts of Ohio can and should go beyond the Full Faith and Credit Clause. She argues that the provisions of the UCCJA require acquiescence and enforcement of the Illinois decree. Even if this were true between Ohio and other jurisdictions, it certainly is not true between Ohio and Illinois." (*Pasqualone, supra,* at p. 1127.) The court based this conclusion on the fact that Illinois had enacted only the basic subject-matter jurisdiction of the UCCJA and had not adopted several sections Ohio considered essential to the effective operation of the statute. Thus, the Ohio court found that the Illinois statute did not have jurisdictional prerequisites substantially in accordance with its own so that it was not bound under the UCCJA to honor the Illinois decree. (*Id.,* at p. 1127.)

Strictly construed, *Pasqualone* might be viewed as not having been decided under the UCCJA. The Ohio court, however, went on to say,

[8]The Ohio custody proceedings were invalidated because the father had failed to inform the trial court of the pending action in Illinois, a jurisdictional prerequisite under the uniform act. (*Pasqualone, supra,* at p. 1124.) The court suggested that father could institute new proceedings.

[9]The court stated that the contacts required in a custody action were greater than those required for divorce, but suggested such contacts might be less than those required in a support action. Curiously, although fully aware of *Kulko* (see *Pasqualone, supra,* at p. 1126), the court also suggested that under other circumstances, acquiescence of the parent in the child's residence in another state "might constitute contact of such a quality and nature that it would be reasonable and fair" to require the parent to defend a custody action in the state of the child's residence. (*Id.,* at p. 1127.) The court also stressed that the father's "minimal physical contact with Illinois *coupled with his specific objections to the move to Illinois*" made it unjust and unreasonable to require him to conduct his defense there. (*Id.,* at p. 1127; italics added.)

"It is contended that our ruling today will emasculate the UCCJA and its effort to provide a forum which will effectively and finally dispose of all custody claims in a given case. We do not believe this to be the case. Ordinarily, sufficient contacts will exist for a court to have jurisdiction over the person of the parties." (*Pasqualone, supra*, at p. 1128.) The court also noted that, "In addition, if Illinois had fully adopted the UCCJA, it probably could have obtained jurisdiction over the person of David through the Ohio courts. R.C. 3109.34 and 3109.35 (UCCJA §§ 19 and 20 [Cal. Civ. Code, §§ 5168 and 5169]) allow courts to ask other courts and accept requests by other courts to hold hearings and order appearances. In *Kulko, supra*, the court suggested that similar provisions in the Revised Uniform Reciprocal Enforcement Support Act of 1968 (an Act which influenced the UCCJA) might well be a means of the California court to obtain jurisdiction. Such may well be true of Sections 19 and 20 as well." (*Id.*, at p. 1128.)

The Supreme Court of Montana addressed the problem in *State* ex rel. *Muirhead* v. *District Ct. of First J.D., etc.* (1979) 169 Mont. 535 [550 P.2d 1304], where father had removed the children from Washington which had awarded custody to mother and then obtained an order in Montana awarding him custody. In a pre-UCCJA opinion, the court held that Montana's long-arm statute did not extend to the mother in the State of Washington and that absent in personam jurisdiction any attempt by Montana to exercise jurisdiction would be in violation of due process of law. (*Id.*, at p. 1306.) (But cf. *Wenz* v. *Schwartze* (1979) 183 Mont. 166 [598 P.2d 1086] [U.S. cert. den. 444 U.S. 1071 (62 L.Ed.2d 753, 100 S.Ct. 1015)] where the court did not require in personam jurisdiction in an abandonment proceeding where the mother had been personally served in California and the father had actual notice by his presence in a Montana hearing.)

### Personal Jurisdiction and Due Process under the UCCJA

The scenario presented to us today speaks eloquently for the need of the UCCJA. It takes little imagination to appreciate the emotional turmoil to which Heather Leonard, then eight years old, was subjected as she was snatched back and forth between the warring factions, all ostensibly in her best interests.

Contrary to the view of the Ohio court in *Pasqualone*, it is our opinion that a requirement of personal jurisdiction in child custody matters

would indeed emasculate the UCCJA and frustrate the many efforts to ensure that the forum in which such disputes are resolved is that having the most meaningful contacts with the child rather than with the fractious parents. (See Bodenheimer & Neeley-Kvarme, *supra*, at p. 246.) Our concern then is whether due process of law is offended by an adjudication of parental custody rights in the absence of personal jurisdiction over a parent. We think not.

■ Starting with Justice Frankfurter's elucidation of the holding in *May* v. *Anderson, supra*, 345 U.S. 528, we find that case to stand only for the proposition that a state is not required by the full faith and credit clause to honor a custody determination obtained without personal jurisdiction over the protesting party. *May* does not prohibit a state from giving recognition to such a decree as a matter of comity. (See *Yearta* v. *Scroggins, supra*, 268 S.E.2d 151.)

It is precisely as a matter of comity that 44 states have enacted some form of the UCCJA provisions in a mutual agreement to enforce the custody decrees of another state, first, to avoid jurisdictional competition and promote cooperation among state courts and, second, to assure that resolution of a custody dispute takes place in the state with which the child and the child's family have the closest connection. (See Civ. Code, §§ 5150, 5162; UCCJA, §§ 1, 13.)

The fundamental concerns of due process are adequate notice and an opportunity to be heard. Such concerns are quieted by the stringent notice requirements of UCCJA. (See Civ. Code, § 5154; UCCJA, § 5.) Other concerns expressed by the United States Supreme Court which led to its decision in *Kulko* are inapplicable here. The court in *Kulko* was particularly absorbed by the inequity of subjecting a party to the expense of litigating in a forum a continent away. (*Kulko, supra*, 436 U.S. at p. 97 [56 L.Ed.2d at pp. 144-145].) The UCCJA has foreclosed such problems by providing for payment by one party of the other party's expenses under various circumstances. (See, e.g., Civ. Code, §§ 5157, 5160, 5164, 5168, 5169; UCCJA, §§ 8, 11, 15, 19, 20.)

The act also provides for procedures designed to minimize the necessity for travel: deposition testimony may be taken in another state; a request may be made by a court of this state of another state court to hold a hearing in that court, to order a party to produce or give evidence, or to have social studies made, and to forward the results to this

court. (Civ. Code, §§ 5167, 5168, 5169; UCCJA, §§ 18, 19, 20.) The act stresses, however, the importance of a personal appearance by each parent. (See Prefatory Note, *supra,* 9 U. Laws Ann., at p. 114.) A request may be made by a court of this state of another state court to order a party to appear in a custody proceeding in this state; a court of this state may similarly order the appearance of a person in this state in a custody proceeding in another state; and the court may condition compliance with the order on the payment of expenses by the other party. (Civ. Code, §§ 5168, 5169; UCCJA, §§ 19, 20.)

We also note that the United States Supreme Court in *Kulko* pointed out that "California has not attempted to assert any particularized interest in trying [child support] cases in its courts by, e.g., enacting a special jurisdictional statute." (*Kulko, supra,* 436 U.S. at p. 98 [56 L.Ed.2d at p. 145].) The court also suggested in *Shaffer* that a particularized long-arm statute might have helped. (*Shaffer* v. *Heitner, supra,* 433 U.S. at p. 215 [53 L.Ed.2d at pp. 704-705].) The uniform act, with an integrated, detailed plan for jurisdiction in child custody proceedings, is such a statute. Given the importance of a custody award in the life of a child, it is fair and reasonable to require a parent to submit to the jurisdiction of a forum which, under the standards of the act, is most suited to make that determination.

The other cause for concern in *Kulko,* that a party might incur financial liability for support by default, is entirely absent in a child custody proceeding.

■ Therefore, we hold today that the requirements of due process of law under the Fourteenth Amendment are met in a child custody proceeding when, in a court having subject-matter jurisdiction over the dispute, the out-of-state parent is given notice and an opportunity to be heard in a manner provided by Civil Code section 5154 (UCCJA, § 5). Personal jurisdiction over the out-of-state parent is not required to make a binding custody determination, entitled to recognition by other states under both the UCCJA requirement of comity (see Civ. Code, § 5161; UCCJA, § 12) and the standards of the full faith and credit clause of the United States Constitution.

The trial court in the instant case was thus correct in denying appellant's motion to quash service of summons on her.

*Jurisdiction to Modify an Out-of-state Decree*[10]

Appellant challenges California's assertion of jurisdiction to modify the Georgia decree on the ground that the UCCJA mandates California's recognition of Georgia's continuing jurisdiction to modify its own decree.

Jurisdiction to modify a custody decree of another state has presented the most difficult problem in the interpretation and application of the UCCJA.

The late Professor Brigitte M. Bodenheimer, reporter for the special committee which drafted the act, maintained that the act clearly and properly contemplates continuing and exclusive jurisdiction in the original decree state unless the child and both parents have moved from that

---

[10]Since entry of the order modifying custody herein on April 30, 1980, Congress has enacted the "Parental Kidnaping Prevention Act of 1980." (See P. L. No. 96-611, enacted Dec. 28, 1980, effective July 1, 1981, 28 U.S.C. § 1738A; see also 1981 CFLR 1581-1588, for the provisions of the act and discussion.)

The act provides for mandatory recognition of custody decrees of sister-states if those decrees meet the jurisdictional standards of the act. The standards are substantially the same as those of the UCCJA.

Section 1738A(c)(2) of the federal act is similar to UCCJA section 3 (Civ. Code, § 5152) with one significant departure: the "home-state test" for jurisdiction over a custody dispute has preference over the "significant-connections test."

Section 1738A(f) provides that a court may modify a custody determination of another state, if (1) it has jurisdiction to make such a determination; and (2) the prior decree state no longer has jurisdiction or has declined to exercise jurisdiction. (See UCCJA, § 14; Civ. Code, § 5163.) Section 1738A(d) provides, "The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant." There is no parallel UCCJA provision. Subsection (c) provides in part: "A child custody determination made by a court of a State is consistent with the provisions of this section only if—(1) such court has jurisdiction under the law of such State; ..." The law of such states that have enacted the UCCJA would presumably follow the jurisdictional requirements set forth in section 1738A(c)(2), mentioned above. (Subsection (c)(1) does clarify that a state's jurisdiction to modify terminates when all parties have ceased to reside there.) Thus, again, we have circular reasoning which places on a trial court the responsibility of applying standards in accord with "the spirit of the act." The difficulty of providing flexibility to meet the diverse factual situations of custody disputes leads inevitably to this result.

Although our conclusions in the case before us would not be different under the standards of the new federal act, we do not reach this issue. In our opinion, the federal act does not have retroactive application. (See *Greene v. United States* (1964) 376 U.S. 149, 160 [11 L.Ed.2d 576, 584, 84 S.Ct. 615].) To hold otherwise would possibly call into question the validity of countless custody decrees, and this would be contrary to the purposes of the UCCJA.

state or the original decree state has declined jurisdiction. She bases her interpretation on the "unambiguous" language of UCCJA section 14 (Civ. Code, § 5163) supplemented by UCCJA section 8, subdivision (b) (Civ. Code, § 5157, subd. (1)), the so-called "clean hands doctrine." (See Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction under the UCCJA* (1981) 14 Fam. L. Q. 203, 216 (ABA section of Fam. Law 1981).) She asserts that "[E]xclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more." (*Id.*, at p. 215.)

Professor Leonard G. Ratner, whose debates through law review articles with Professors Brainerd Currie and Albert A. Ehrenzweig helped spark the promulgation of the UCCJA, disagrees. He contends that UCCJA section 14, subdivision (a), imposing the decree-state *preference* for jurisdiction to modify, is confusing and "impairs the access to evidence and antiharassment purposes of the Act." (See Ratner, *Procedural Due Process and Jurisdiction to Adjudicate, supra*, 75 Nw.U.L.Rev. 363, 398.) Ratner points out that a decree state often has neither home-state jurisdiction nor significant-connections jurisdiction under UCCJA section 3 (Civ. Code, § 5152). (*Id.*, at pp. 395-401.) He further notes that the noncustodial parent who remains in the decree state is particularly able to harrass the custodial parent who has moved away but returns the child to the decree state for visits. (*Id.*, at p. 402; see, e.g., *Palm* v. *Superior Court, supra*, 97 Cal.App.3d 456.)

We do not agree that UCCJA section 14 (Civ. Code, § 5163, subd. (1)) unambiguously affirms continuing and *exclusive* jurisdiction to modify in the decree state as long as one parent continues to reside there and the state has not declined jurisdiction. The commissioners' note to section 14 indicates only a "preference" for the decree state.[11]

---

[11]The commissioners' note to UCCJA section 14 (Civ. Code, § 5163) states: "Courts which render a custody decree normally retain continuing jurisdiction to modify the decree under local law.... In order to achieve greater stability of custody arrangements and avoid forum shopping, subsection (a) declares that other states will defer to the continuing jurisdiction of the court of another state as long as that state has jurisdiction under the standards of this Act. In other words, all petitions for modification are to be addressed to the prior state if that state has sufficient contact with the case to satisfy section 3 [§ 5152]. The fact that the court had previously considered the case may be one factor favoring its continued jurisdiction. If, however, all the persons involved have moved away or the contact with the state has otherwise become slight, modification jurisdiction would shift elsewhere. Compare Ratner, Child Custody in a Federal System, 62 Mich.L.Rev. 795, 821-2 (1964). [¶] For example, if custody was awarded to the father in state 1 where he continued to live with the children for two years and thereafter his wife kept the children in state 2 for 6 1/2 months (3 1/2

Courts acknowledging continuing jurisdiction in the decree state have usually found an additional basis for jurisdiction. (See e.g., *Palm, supra,* where California, the home state, deferred to North Dakota, the decree state and the forum with the earlier modification petition; *Allison* v. *Superior Court, supra,* 99 Cal.App.3d 993, where the court assumed jurisdiction to modify based on significant connections from the prior California decree, the children's prior local residence and the mother's continued residence and local evidence on her fitness for visitation; *Schlumpf* v. *Superior Court* (1978) 79 Cal.App.3d 892 [145 Cal.Rptr. 190], where California, the decree state, found it had continuing jurisdiction based on significant contacts because of the mother's continued residence and visits of the children, but deferred to Wyoming, the children's home state for several years; cf. *In re Marriage of Steiner* (1979) 89 Cal.App.3d 363, 371 [152 Cal.Rptr. 612], where the court found that authority to modify should not rest solely on original decree state jurisdiction; *In re Marriage of Bosse* (1979) 89 Cal.App.3d 440 [152 Cal.Rptr. 665], where California declined decree-state jurisdiction to modify or enforce visitation rights.)

We turn now to the provisions of the act. Civil Code section 5163, subdivision (1) (UCCJA, § 14) provides: "If a court of another state has made a custody decree, a court of this State shall not modify that decree unless (1) it appears to the court of this State that the court which rendered the decree does not now have jurisdiction under jurisdictional prerequisites substantially in accordance with this act or has declined to assume jurisdiction to modify the decree and (2) the court of this State has jurisdiction." ■ Section 5163 thus gives California the right to determine (1) whether the prior decree state meets current jurisdictional prerequisites and (2) whether California meets those prerequisites. This is consistent with the general principle that a California

months beyond her visitation privileges) with or without permission of the husband, state 1 has preferred jurisdiction to modify the decree despite the fact that state 2 has in the meantime become the 'home state' of the child. If, however, the father also moved away from state 1, that state loses modification jurisdiction interstate, whether or not its jurisdiction continues under local law. See Clark, Domestic Relations 322-23 (1968). Also, if the father in the same case continued to live in state 1, but let his wife keep the children for several years without asserting his custody rights and without visits of the children in state 1, modification jurisdiction of state 1 would cease. [Citation.] The situation would be different if the children had been abducted and their whereabouts could not be discovered by the legal custodian for several years. The abductor would be denied access to the court of another state under section 8(b) [Civ. Code, § 5157, subd. (2)] and state 1 would have modification jurisdiction in any event under section 3(a)(4) [Civ. Code, § 5152, subd. (1)(d)]...." (9 U. Laws Ann. 154-155 (1979).)

court has the right to determine its jurisdiction. (See *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 302 [109 Cal.Rptr. 942, 132 A.L.R. 715].)

In making these determinations, the court is directed first to the subject-matter requirements set out in Civil Code section 5152 (UCCJA, § 3) which provides in relevant part: "(1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination *by initial or modification decree* if the conditions as set forth in any of the following paragraphs are met:

"(a) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state.

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." (Italics added.)

■ In the case before us, Georgia, the prior-decree state, was no longer the "home state" as defined by Civil Code section 5151, subdivision (5) (UCCJA, § 2, subd. (5)) which provides that "'[h]ome state' means the state in which the child immediately preceeding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, ... Periods of temporary absence of any of the named persons are counted as part of the six-month or other period...." The parties agree that California was the home state and did have jurisdiction under Civil Code section 5152, subdivision (1)(b) (UCCJA, § 3) to modify the Georgia decree based on Heather's residence with her father in this state for over six months before his commencement of the modification proceedings.

Since California, not Georgia, met the "home-state test," we next focus on the alternate, three-pronged "significant connections test." On July 31, 1979, at the hearing on the motion to quash, the court found that jurisdiction should be assumed under section 5152, subdivision

(1)(b) because (1) it was in the best interests of the child that California assume jurisdiction, (2) both father and child have a significant connection with this state, and (3) substantial evidence about the child's present and future care and welfare was available. The court thereby impliedly found that Georgia did not meet the three requisites for jurisdiction under this test. The court based its decision on the father's verified petition for modification, the declarations of the parties in support of and in opposition to the motion to quash, the memorandum of points and authorities of each party, all of which are part of the record, and the preliminary report of the probation department which is alluded to by the court and the parties.

Respondent father in this case had lived in California since 1975, and at the time of the court's initial determination, Heather had lived with him for approximately 14 months. The California residence of both father and child constituted a significant connection with this state. Heather's school attendance in this state and her relationship with her father, his extended family, and the community, provided substantial evidence concerning Heather's present and probable future care as well as her personal relationship with her family and environment.

Appellant did not dispute the fact that substantial evidence about Heather's welfare had accrued during the child's protracted sojourn with her father. She alleged, however, that Heather's mother, paternal relatives, schools, friends and teachers were all in Georgia. On the contrary, the evidence before the trial court was that appellant was temporarily residing with her parents in Florida and, according to the father's allegation, that Heather's visitation with her paternal relatives in Georgia had been restricted. Other Georgia witnesses could no doubt offer substantial evidence about Heather's *past* care, but the Act requires substantial evidence about *present* and *future* care. Heather's relationship with her mother is certainly significant in the sense that any parent-child relationship, whether good or bad, is significant. But, the act itself seeks to assure that "litigation concerning the custody of a child takes place ordinarily *in the state* with which the child and his family have the *closest* connection...." (See Civ. Code, § 5150, subd. (1)(c); UCCJA, § 1 (italics added).) California is the state with the closest and most immediate connection with the child.

The court found that the best interests of the child were paramount and that those interests would be served by adjudication of the custody

issue in California. This finding is supported by substantial evidence and will not be disturbed on appeal.[12]

The commissioners' note to UCCJA section 14 (Civ. Code, § 5163) suggests that a decree state might lose jurisdiction to modify after the child has been absent for "several years" from the custodial parent who remains in the decree state. Applying that example to this case, we would be required to find that 14 months did not meet the test. "Several years," however, is an arbitrary period. It may be a very short time in the life of an adult, and a relatively insignificant period for a teenager. But, for a young child with a different sense of time, it is more relative: several years may be more than half the lifetime of a four-year-old or a third of a lifetime of a seven-year-old. One of the major purposes of the act is to provide stability and continuity of relationships for the child. Appellant voluntarily uprooted Heather in 1978; she insists that we must do so again. We can be certain that circumstances did not remain static for Heather after her arrival in California in June 1978. She undoubtedly went through an initial mourning period and then put down new roots during an adjustment period. The second-grade school progress reports, attached to respondent's declaration, attest to significant academic progress and are some indication of her successful integration into her new family and her new community. It would not be in Heather's best interests to disrupt her a second time unless the trial court, after considering the evidence at a hearing on the merits, determines that Heather's best interests dictate her return to her mother in Georgia. (See *Schlumpf* v. *Superior Court, supra*, 79 Cal.App.3d at pp. 900-901.)

The court's finding that it would be in Heather's best interests to retain jurisdiction was supported by the evidence and tips the scales in favor of California under the "significant connections test."

---

[12]The commissioners' note to UCCJA section 3 (Civ. Code, § 5152, subd. (1)(b)) lends support to the court's finding. It provides that this section "perhaps more than any other provision of the Act requires that it be interpreted in the spirit of the legislative purposes expressed in section 1 [Civ. Code, § 5150]. The paragraph was phrased in general terms in order to be flexible enough to cover many fact situations too diverse to lend themselves to exact description. But its purpose is to limit jurisdiction rather than proliferate it. The first clause of the paragraph is important: jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. There must be maximum rather than minimum contact with the state. The submission of the parties to a forum, perhaps for purposes of divorce, is not sufficient without additional factors establishing closer ties with the state. . . ." (9 U. Laws Ann. (1979) p. 124, italics in original.)

We conclude that substantial evidence supported the trial court's determination that California met both the "home-state test" and the "significant connections test" under the UCCJA, and therefore California was not required to *defer* to the jurisdiction of Georgia for modification of the prior Georgia decree. In arriving at this conclusion, however, we stress that the result is appropriate under the circumstances of this case. In every instance where a California court is faced with a request to modify the decree of another state, the court must be mindful of the purposes of the UCCJA set forth in Civil Code section 5150 (UCCJA, § 1). Each case demands that the trial court engage in a delicate balancing of these purposes, keeping in mind that the primary purpose of the act is to promote the best interests of the child. The record reflects that the court properly weighed these factors in the instant case.

At the hearing on the merits on March 14, 1979, the trial court had to consider not only the standards of the UCCJA but also California's substantive law on child custody determinations as set forth in Civil Code section 4600 and the decisions interpreting that section. ■ The primary consideration in making a custody award is the best interests of the child (§ 4600), and before custody can be modified there must be a change of circumstances. (See *In re Marriage of Carney* (1979) 24 Cal.3d 725, 730-731 [157 Cal.Rptr. 383, 598 P.2d 36]; *Cochran* v. *Cochran* (1966) 240 Cal.App.2d 418, 421 [49 Cal.Rptr. 670]; 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 85 et seq., p. 4606 et seq.)

A transcript of the hearing on that date and the full probation report are not part of the record before us. Since appellant has failed to provide us with a full record, we must presume that the evidence supported the court's determination that it was in Heather's best interests to change custody to her father. The record supports a finding that there has been a sufficient change of circumstances to justify a modification. (See generally, 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 235, pp. 4225-4226.)

*Improper Removal or Retention of Child*

■ As the commissioners' note to UCCJA section 3 (Civ. Code, § 5152) indicates, jurisdiction to modify a decree of another state is subject to the additional restriction contained in UCCJA section 8, sub-

division (b) (Civ. Code, § 5157, subd. (2))[13] which incorporates the "clean hands doctrine."

Relying on this provision, appellant contends that because of respondent's abduction of the child from Georgia in 1979, California should have declined jurisdiction. The act mandates refusal of the exercise of jurisdiction to modify in cases where the child, without the consent of the custodian, has been improperly removed or improperly retained after a visitation or other temporary relinquishment—unless otherwise required in the interest of the child. (Civ. Code, § 5157, subd. (2); UCCJA, § 8, subd. (b); see *Neal* v. *Superior Court* (1978) 84 Cal. App.3d 847 [148 Cal.Rptr. 841]; *In re Marriage of Schwander* (1978) 79 Cal.App.3d 1013 [145 Cal.Rptr. 325].)

Appellant's citation of *Neal* is inapposite here. *Neal* involved an Arkansas resident who brought her child to California in violation of an Arkansas custody decree awarding custody to the father and who 18 days later filed a petition for custody in California. Jurisdiction was of course refused. Nor is *Schwander* helpful to appellant. There the father, alleging the need for emergency jurisdiction, brought the child to California during the pendency of modification proceedings in Illinois, the original decree state. The California court, finding no emergency, declined jurisdiction and assessed attorneys' fees against the participating grandparent who had been joined as a party.

The respondent in this case took his child from Georgia under what he had reason to believe was a valid California order prohibiting her removal from the state. We cannot condone any forcible removal of a child, but we cannot overlook that appellant had committed the identical act three days before, also under color of law, i.e., the Georgia custody decree. Nor can we overlook that the child had properly been with the respondent for the previous year.

The respondent initially had resorted to the orderly processes of the law by filing a modification proceeding and immediately informing ap-

---

[13]Civil Code section 5157, subdivision (2) (UCCJA, § 8, subd. (b)) provides: "Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances."

pellant of his action. In response, appellant chose self-help, nearly always traumatic for a child, rather than invoking the aid of either the California or Georgia court. She could have filed a petition in Georgia to reaffirm and enforce the Georgia decree which would have had the added benefit of providing a basis of cooperation between the courts in California and Georgia. Or, she could have filed enforcement proceedings in California. (See Civ. Code, §§ 5162, 5164; UCCJA, §§ 13, 15.) The unfortunate consequence of the impulsive action of each parent is the diminished capacity to trust one another and to establish a working parental relationship for the benefit of Heather.

Under the circumstances of this case, we find that the interest of the child dictates that the sanction not be imposed.

### Concurrent Jurisdiction and Forum Non Conveniens

We have previously found that California did have the jurisdiction to modify the Georgia decree and was not required to defer to Georgia. Georgia, however, had continuing jurisdiction to modify its own custody decree based on one parent's retention of residence there. (See comr's. note to UCCJA, § 14, set out in fn. 11.) The act contemplates concurrent jurisdiction and contains three provisions to assist a court in determining which forum to choose. (See *In re Marriage of Hopson, supra*, 110 Cal.App.3d 884, 899.) The three provisions concern (1) the pendency of proceedings in another state (Civ. Code, § 5155; UCCJA, § 6) not applicable here; (2) inconvenient forum (Civ. Code, § 5156; UCCJA, § 7) which we discuss below; and (3) improper retention or removal of a child (Civ. Code, § 5157; UCCJA, § 8) which we have previously discussed.

Appellant asserts that between Georgia and California, Georgia was the more appropriate forum to hear the custody dispute. (See Civ. Code, § 5156; UCCJA, § 7.) In her support, she cites *Jagger* v. *Superior Court* (1979) 96 Cal.App.3d 579 [158 Cal.Rptr. 163], a dissolution proceeding decided under the standards of *Internat. Shoe Co.* v. *Washington, supra*, 326 U.S. 310. We have found those standards supplanted by the standards of the UCCJA in a child custody proceeding. The *Internat. Shoe Co.* standards highlighted by appellant, e.g., the extent to which a party may be substantially disadvantaged, are precisely the kind of defendant-oriented considerations which should give way to the child-oriented contacts favored by the uniform act.

Appellant's arguments relating to the availability of substantial evidence have been discussed previously as a basis for jurisdiction to modify the decree. We note that many of the facts that support jurisdiction to modify an out-of-state decree are the ones that would foreclose a finding of inconvenient forum.

We cannot give credence to appellant's contention that the financial burden of litigating in the California forum denied her any opportunity to obtain a fair hearing. The uniform act provides procedures, mentioned before, both to minimize the necessity for travel and to compensate appellant financially if justice so requires.

In the trial court there was evidence that appellant had voluntarily relinquished custody for an indeterminate period. At some time it was inevitable that California would acquire the substantial contacts with appellant's daughter which would render it an appropriate forum to litigate custody. When appellant acquiesced in Heather's extended residence with her father, she ran the substantial risk that the proper forum to determine any dispute would shift from Georgia to California. It would be deplorable, however, to discourage parents from voluntarily entering into amicable visitation agreements. In cases such as the one before us, we suggest that a written agreement, stating the purpose and duration of the stay with the out-of-state parent and providing for state jurisdiction in the event of a dispute (see Civ. Code, § 5156, subd. (3)(d); UCCJA, § 7), would perhaps obviate much of the pain of a proceeding like the present one—for the child and both parents.

(7) Whether a trial court stays or dismisses proceedings on the ground of inconvenient forum is discretionary, and its decision will not be reversed on appeal absent a clear abuse of discretion. (Civ. Code, § 5156; UCCJA, § 7; *Clark* v. *Superior Court* (1977) 73 Cal.App.3d 298, 309 [140 Cal.Rptr. 709].) We find no abuse of discretion.

The judgment is affirmed.

Feinberg, Acting P. J., and Panelli, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 14, 1981.

---

*Assigned by the Chairperson of the Judicial Council.