IN RE the TERMINATION OF PARENTAL RIGHTS TO
THOMAS J.R., a Person Under the Age of 18:

TAMMIE J.C., Petitioner-Respondent-Petitioner,

v.

ROBERT T.R., Respondent-Appellant.

Supreme Court

*No. 01–2787. Oral argument September 11, 2002.—Decided
June 20, 2003.*

2003 WI 61

(Also reported in 663 N.W.2d 734.)

Guardian ad litem briefs were filed by *Daniel P. Bestul* and *Duxstad, Vale & Bestul, S.C.,* Monroe, with oral argument by *Daniel P. Bestul.* Petitioner-respondent-petitioner joined the guardian ad litem briefs.

For the respondent-appellant, there was a brief and oral argument by *Duane M. Jorgenson,* Darlington.

An amicus curiae brief was filed by *Richard J. Auerbach, Auerbach & Porter,* and *Gretchen Viney,* Madison, on behalf of the Dane County Guardian ad Litem Project; and *Carol M. Gapen, Theresa L. Roetter* and *Stafford, Rosenbaum, LLP,* Madison, on behalf of American Academy of Adoption Attorneys.

¶ 1. ANN WALSH BRADLEY, J. The petitioner, Tammie J.C., seeks review of an unpublished decision of the court of appeals reversing an order that terminated the parental rights of the respondent, Robert T.R.[1] The court of appeals determined that a court could terminate a person's parental rights only if it had personal jurisdiction over the person, and that the court's exercise of jurisdiction over Robert in this case had no basis because Robert, a resident of Arizona, lacked minimum contacts with Wisconsin.

¶ 2. We recognize that personal jurisdiction through minimum contacts is generally necessary for a judgment to bind any out-of-state person. We conclude,

---

[1] *Tammie J.C. v. Robert T.R.,* No. 01–2787, unpublished slip op. (Wis. Ct. App. January 10, 2002) (reversing a judgment of the circuit court for Lafayette County, James E. Welker, Judge).

however, that the status exception to the general personal jurisdiction requirements, as employed in the Uniform Child Custody Jurisdiction Act (UCCJA), provides a basis for the exercise of jurisdiction in a child custody case. Such an exercise of jurisdiction is consistent with notions of fair play and substantial justice. We also conclude that Wis. Stat. § 801.05(11), which references the UCCJA, provides sufficient due process protection to out-of-state parents based on notice and an opportunity to be heard. Accordingly, we reverse the court of appeals and remand the case for a determination on the remaining issues previously raised in that court, but not briefed or argued here.

## I

¶ 3. Tammie and Robert were married in Wyoming in 1987.[2] Thomas J.R. was born in Wyoming in 1988, during the marriage. Tammie's daughter from a previous marriage (Robert's step-daughter) lived with the family throughout their marriage. The family moved to Arizona in 1991. In 1992, after Robert was accused of sexually assaulting Tammie's daughter, Tammie moved back to Wyoming with her daughter and Thomas, leaving Robert in Arizona. Robert accepted a plea bargain related to the sexual assault charges, and he was sentenced to a ten-year prison term in Arizona.

¶ 4. Subsequently, Robert filed for divorce. The Arizona court awarded sole custody of Thomas J.R. to Tammie and denied Robert all visitation rights. It found such visitation would seriously endanger Thomas' physical, mental, and emotional health.

---

[2] The couple had been married previously, but divorced in 1985.

¶ 5. Tammie moved to Nebraska with Thomas and her daughter in 1993, and then in 1996, they moved to Wisconsin. Tammie did not disclose either move to Robert, but he was aware of Tammie's general location while she was living in Nebraska.

¶ 6. Robert did not contact Thomas during his time in prison because Thomas lived with Robert's step-daughter, the victim of the sexual assault. Arizona law prohibited anyone convicted of sexual assault from contacting any person at the address belonging to the sexual assault victim. Robert began to send mail to Thomas after this rule was changed in 1998, but the Arizona Department of Corrections curtailed his mailings after Tammie complained about the correspondence.

¶ 7. Tammie remarried her daughter's biological father in Wisconsin, and on January 13, 2000, she filed a petition in Lafayette County Circuit Court to terminate Robert's parental rights. At the same time, Tammie's husband petitioned the court to adopt Thomas following termination of Robert's parental rights.

¶ 8. The circuit court issued a summons notifying Robert of the pending termination action and ordering him to appear on February 2, 2000. The court continued the matter to February 28, because of difficulties serving Robert, who was in prison in Arizona. Robert was served on February 14, 2000. On March 8, Robert moved, through his Wisconsin counsel, for an order requiring Tammie to pay his expenses in appearing personally at the termination trial, or alternatively, for a delay in the proceedings until he was released from prison. The court found good cause to delay the trial, and noting that Robert was to be released from prison on August 28, 2000, it set the matter for a jury trial on September 19, 20, and 21, 2000.

¶ 9. Robert moved to dismiss, asserting that Wisconsin lacked personal jurisdiction over him, and that he had not received required statutory notice that the child custody decree in Arizona could lead to termination of parental rights in Wisconsin. Robert claimed that the petition for termination did not afford him due process. The circuit court denied the motion. Robert moved for reconsideration after the case was transferred to a different judge, but the successor judge denied the motion.

¶ 10. Before issuing a final ruling in the termination of parental rights proceeding, the circuit court afforded the parties an opportunity to seek resolution of the jurisdictional question in the Arizona courts. Tammie filed a motion requesting that the Arizona court decline jurisdiction. Robert filed a separate motion to modify visitation, asking the Arizona court to grant him "reasonable periods of visitation with his son." Pointing to A.R.S. § 8–532, an Arizona statute requiring that a child at issue in a termination proceeding be present in the state, the Pima County Juvenile Court granted Tammie's motion, declining to exercise jurisdiction over an action to terminate Robert's parental rights.[3]

¶ 11. The circuit court in Wisconsin then determined that termination would be in the best interest of the child in this case and terminated Robert's parental rights on the ground of "continuing denial of periods of physical placement and visitation," under Wis. Stat. § 48.415(4) (1999–2000).[4]

---

[3] The record does not indicate what action the Arizona court took on Robert's motion to modify visitation.

[4] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

¶ 12. Robert appealed the order, again asserting that the circuit court lacked personal jurisdiction over him to terminate his parental rights and that he had not received the proper notice that the Arizona child custody decree could lead to termination in Wisconsin. The court of appeals determined that a parent must be provided with fundamentally fair procedures, including an adequate basis for exercising personal jurisdiction, in any action to terminate parental rights. Because it concluded that Wisconsin did not have personal jurisdiction over Robert, the court reversed the termination order.

## II

¶ 13. This case presents us with an issue involving the interpretation and application of the jurisdictional provisions of the UCCJA and Wisconsin's jurisdiction statutes, in the context of an action to terminate the parental rights of a person who is not a Wisconsin resident and does not have minimum contacts with the state. A circuit court's determinations of whether statutory and constitutional bases exist for jurisdiction over a non-resident in a termination of parental rights proceeding present questions of law, subject to independent appellate review. *In the Interest of A.E.H.,* 161 Wis. 2d 277, 299, 468 N.W.2d 190 (1991); *State ex rel. N.R.Z. v. G.L.C.,* 152 Wis. 2d 97, 103, 447 N.W.2d 533, 535 (1989).

¶ 14. In addressing whether the court in this case had jurisdiction to terminate Robert's parental rights, we first discuss the general requirement of minimum contacts to establish personal jurisdiction, and the exception to the requirement for cases involving determinations of status under the UCCJA. We then consider

Wis. Stat. § 801.05(11) which provides that child custody determinations are binding on persons who receive notice under § 822.05 and are afforded an opportunity to be heard. Finally, we address the requirement that an exercise of jurisdiction satisfies the due process standard of fair play and substantial justice, and assess the exercise of jurisdiction.

## III

### A

¶ 15. The court of appeals in this case determined that the termination of parental rights order issued by the circuit court was not binding on Robert because the circuit court lacked personal jurisdiction over him. In essence, that determination left Thomas J.R. in a jurisdictional limbo. Because the Arizona court concluded that it could not exercise jurisdiction, the court of appeals' determination left Thomas without any forum to address the termination of parental rights and accompanying adoption actions.

■

¶ 16. We recognize that a court generally must have some type of territorial jurisdiction over a person for a judgment rendered by a court to bind the person. *Mayer v. Mayer,* 91 Wis. 2d 342, 283 N.W.2d 591 (Ct. App. 1979). Territorial jurisdiction is typically either in personam or in rem. *Pennoyer v. Neff,* 95 U.S. 714, 724 (1877). Historically, in personam judgments were binding on a person only if the person was physically present in the state issuing the judgment. *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (citing *Pennoyer,* 95 U.S. at 733).

¶ 17. In *Pennoyer,* the Court determined that: "the tribunals of one State have no jurisdiction over persons

225

beyond its limits, and can inquire only into their obligations to its citizens when exercising its conceded jurisdiction over their property within its limits." *Pennoyer*, 95 U.S. at 731. The Court also determined in *Pennoyer* that a judgment of a court lacking personal jurisdiction violated the Due Process Clause of the Fourteenth Amendment. "The *Pennoyer* rules generally favored nonresident defendants by making them harder to sue." *Shaffer v. Heitner*, 433 U.S. 186, 200 (1977).

¶ 18. More recent Supreme Court opinions have dramatically limited the requirements for personal jurisdiction. In *International Shoe,* the Court held that physical presence in a state is not necessary for personal jurisdiction over a corporation to satisfy due process when the out-of-state defendant has minimum contacts with the state that is exercising jurisdiction:

> [D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'

*International Shoe,* 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)) (additional citations omitted).

¶ 19. Wisconsin has codified the "minimum contacts" doctrine in its statute governing personal jurisdiction, Wis. Stat. 801.05, which states in part:

> 801.05 Personal jurisdiction, grounds for generally. A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

(1) Local presence or status. In any action whether arising within or without this state, against a defendant who when the action is commenced:

(a) Is a natural person present within this state when served; or

(b) Is a natural person domiciled within this state; or

(c) Is a domestic corporation or limited liability company; or

(d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.

■

¶ 20. There is no dispute that in this case, Robert was not served while in Wisconsin, does not live in Wisconsin, and is not engaged in substantial activities in Wisconsin. In fact, he has never been to Wisconsin. The only tie Robert has to Wisconsin is that his son and ex-wife live here. Robert did not have minimum contacts with Wisconsin, and Wisconsin did not have personal jurisdiction over him under Wis. Stat. § 801.05(1).

### B

¶ 21. While we have determined that Wisconsin does not have personal jurisdiction over Robert by virtue of minimum contacts, our determination does not necessarily mean that Wisconsin does not have jurisdiction to enter an order terminating Robert's parental rights. The answer lies in an exception to the requirement of minimum contacts for personal jurisdiction, applicable to determinations of status.

¶ 22. A "status" exception to the general requirement of minimum contacts for personal jurisdiction has long been recognized by the Supreme Court:

> To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by anything we have said, that a State may not authorize proceedings to determine the *status* of one of its citizens towards a non-resident, which would be binding within the State . . . .

*Pennoyer,* 95 U.S. at 734 (emphasis in original). The *Pennoyer* Court excluded certain types of actions, such as marriages and divorces, from the minimum contacts requirement, explaining that each state has jurisdiction to "determine the civil *status* and capacities of all its inhabitants," even if an involved non-resident cannot be served within the state. *Id.* at 734–35.

¶ 23. In 1977, in *Shaffer,* the Supreme Court reasserted the validity of the status exception it had recognized in *Pennoyer.* The Court stated that a minimum contacts analysis under *International Shoe* is generally required when determining personal jurisdiction. *Shaffer,* 433 U.S. at 208. In a footnote, however, the *Shaffer* court emphasized that an exception exists for "particularized jurisdictional rules governing adjudications of status": "We do not suggest that jurisdictional doctrines other than those discussed in text, such as the particularized jurisdictional rules governing adjudications of status, are inconsistent with the standard of fairness." *Id.* at 208 n.30 (citations omitted).

¶ 24. The Supreme Court has long required that for an exercise of personal jurisdiction not to offend the Due Process Clause of the Fourteenth Amendment, it must comply with "traditional notions of fair play and substantial justice." *International Shoe,* 326 U.S. at 316 (quoting *Milliken,* 311 U.S. at 463); *Pennoyer,* 95 U.S. at 720. In *Burnham v. Superior Court,* 495 U.S. 604 (1990), the Court stated that any method of assuming jurisdiction over a person must satisfy the same due

process standard required for personal jurisdiction based on minimum contacts: "For new procedures, hitherto unknown, the Due Process Clause requires analysis to determine whether 'traditional notions of fair play and substantial justice' have been offended." *Burnham*, 495 U.S. at 622 (quoting *International Shoe*, 326 U.S. at 316).

¶ 25. The status exception to the minimum contacts requirement has commonly been applied in the context of divorce actions. For instance, the Supreme Court has held that states can enter divorce decrees binding on a non-resident spouse so long as the other spouse lives in the state. *See e.g., Estin v. Estin,* 334 U.S. 541, 544 (1948); *Williams v. North Carolina,* 317 U.S. 287, 298–99 (1942). The Court reasoned in *Williams* that divorce decrees

> are more than in personam judgments. They involve the marital status of the parties. Domicile creates a relationship to the state which is adequate for numerous exercises of state power. . . . The marriage relation creates problems of large social importance. Protection of offspring, property interests, and the enforcement of marital responsibilities are but a few of commanding problems in the field of domestic relations with which the state must deal.

*Williams,* 317 U.S. at 298. The Court concluded that "each state by virtue of its command over its domiciliaries and its large interest in the institution of marriage can alter within its own borders the marriage status of the spouse domiciled there, even though the other spouse is absent." *Id.* at 298–99 (citations omitted).[5]

---

[5] The Supreme Court has made clear, however, that subjects such as alimony and child support are not covered by the status exception, and awards or changes in awards made in divorce

¶ 26. Jurisdiction for the termination of parental rights action in this case was determined under the UCCJA.[6] It governs child custody proceedings that determine the status of children, and bases the exercise of jurisdiction on the status exception to personal jurisdiction. "Termination of parental rights" actions are not specifically included in the UCCJA's definition of "child custody proceedings," which are "proceedings in which a custody determination is one of several issues, such as an action for divorce or separation, and includes child neglect and dependency proceedings." Wis. Stat. § 822.02(3). This court has explicitly concluded, however, that termination of parental rights actions are child custody proceedings under the UCCJA. *A.E.H.*, 161 Wis. 2d at 298–99.[7]

¶ 27. A comment to section 12 of the UCCJA, Binding Force and Res Judicata Effect of Custody Decree, adopted in Wisconsin as Wis. Stat. § 822.12,

decrees are not binding on a non-resident spouse. *Kulko v. Superior Court,* 436 U.S. 84, 91–92 (1978).

[6] The UCCJA, or the closely-related Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA), has been adopted in each of the 50 states. *David S. v. Laura S.,* 179 Wis. 2d 114, 138, 507 N.W.2d 94 (1993). Wisconsin adopted the UCCJA in 1975, effective May 28, 1976, as chapter 822 of the statutes. *See* ch. 283, Laws of 1975.

[7] Our conclusion in *A.E.H.* is supported by the legislative history of chapter 822. After the introduction of A.B. 1246, the bill relating to chapter 822, the Legislative Reference Bureau received a drafting request to amend the definition of "custody proceeding" to except termination of parental rights actions, by inserting the phrase "but excludes proceedings to terminate parental rights under ss. 48.40 to 48.43." *See* Legislative Reference Bureau drafting file for ch. 283, Laws of 1975. The drafting request was not incorporated into the final draft of the bill that later was enacted as chapter 822.

explains that the drafters of the UCCJA intended that jurisdiction under the UCCJA need not be based on technical personal jurisdiction, but rather on the theory that child custody proceedings are "proceedings in rem or proceedings affecting status." The drafters noted that there must be strict compliance with the due process mandates of notice and the opportunity to be heard:

> This section deals with the intra-state validity of custody decrees which provides the basis for their interstate recognition and enforcement. The two prerequisites are (1) jurisdiction under section 3 of this Act and (2) strict compliance with due process mandates of notice and opportunity to be heard. There is no requirement for technical personal jurisdiction, on the traditional theory that custody determinations, as distinguished from support actions . . . are proceedings in rem or proceedings affecting status.

*See* Commissioners' comment on § 12 of the UCCJA, 9 U.L.A. 557.

¶ 28. The purpose behind the UCCJA is explained in a prefatory note to the UCCJA stating why a uniform law regulating child custody jurisdiction was necessary when the UCCJA was drafted in 1968:

> There is growing public concern over the fact that thousands of children are shifted from state to state and from one family to another every year while their parents or other persons battle over their custody in the courts of several states. . . .
>
> . . . .
>
> There is no certainty as to which state has jurisdiction when persons seeking custody of a child approach the courts of several states simultaneously or successively. . . .

UCCJA Prefatory Note, 9 U.L.A. 262–63 (1999).

¶ 29. The UCCJA was enacted to address these concerns. Among the objectives of the UCCJA is to: "avoid jurisdictional competition and conflict with courts of other states in matters of child custody," and to "assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and family have the closest connection." Wis. Stat. § 822.01(1)(a) and (c).[8] Moreover, "jurisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to deter-

---

[8] Wisconsin Stat. § 822.01(1) provides that:

(1) The general purposes of this chapter are to:

(a) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(b) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(c) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and family have a closer connection with another state;

(d) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(e) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(f) Avoid relitigation of custody decisions of other states in this state insofar as feasible;

(g) Facilitate the enforcement of custody decrees of other states;

mine custody in a particular state." *See* Commissioners' comment on § 3 of the UCCJA, 9 U.L.A. 309 (emphasis in original).

¶ 30. The UCCJA has been the subject of numerous constitutional challenges, on the grounds that it does not require minimum contacts. Most courts that have considered the validity of jurisdiction under the UCCJA have determined that the status exception applies to child custody cases under the UCCJA, and that personal jurisdiction based on minimum contacts is not required. *See e.g., In re Marriage of Leonard,* 122 Cal. App. 3d 443, 450–60 (Cal. App. 1981); *People ex rel. State of Wyoming ex rel. Watson v. Stout,* 969 P.2d 819, 821 (Colo. App. 1998); *Balestrieri v. Maliska,* 622 So. 2d 561, 563 & n.1 (Fla. App. 1993) (listing states which had made such determinations); *Thompson v. Thompson,* 526 S.E.2d 576 (Ga. App. 1999); *Bartsch v. Bartsch,* 636 N.W.2d 3 (Iowa 2001).

¶ 31. A few courts have differed, concluding that minimum contacts over an out-of-state parent are required in child custody proceedings. In some of these cases, however, the circumstances or the statutes differed from those at issue in this case. *See e.g., In re Dean,* 447 So. 2d 733 (Ala. 1984); *In the Interest of John Doe,* 926 P.2d 1290, 1299 (Haw. 1996) (concluding that jurisdiction under the UCCJA without minimum contacts was improper where "*neither* parent ever was or intended to be a resident of the state"); *In re Vernon R.V.,* 991 P.2d 986, 987 (N.M. App. 1999) (concluding that minimum contacts were required in a "straight

---

(h) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerned with the same child; and

(i) Make uniform the law of those states which enact it.

termination" proceeding that did also not involve adoption); *Pasqualone v. Pasqualone,* 406 N.E.2d 1121, 1127–28 (Ohio 1980) (concluding that Illinois, which had not adopted the portion of the UCCJA relating to jurisdiction over an out-of-state parent, did not validly exercise jurisdiction absent minimum contacts).

¶ 32. Yet, recently, most courts that have dealt specifically with the termination of parental rights have determined that the status exception applies. *See e.g., S.B. v. State of Alaska,* 61 P.3d 6, 15–16 & n. 38 (Alaska 2002) (listing states which have made such determinations); *D.A. v. State of Utah,* 63 P.2d 607 (Utah 2002). The dissent's analysis focuses instead on a pre-*Schaffer* case, *May v. Anderson,* 345 U.S. 528 (1953). It cites this case as support for the conclusion that "minimum contacts" are required in this termination of parental rights case. Dissent, ¶ 93.

¶ 33. Although the dissent implies that *May* clearly supports its argument, no other jurisdiction has found *May* to be dispositive when addressing the status exception as it applies to termination of parental rights cases. In fact, jurisdictions that have addressed *May*'s effect on termination of parental rights proceedings have uniformly rejected its applicability. *D.A.,* 63 P.3d 607, ¶ 27.

¶ 34. The Court in *May* addressed an Ohio proceeding regarding children located in Ohio. The issue was not whether the Ohio court had jurisdiction. Rather, the issue was whether the Ohio court was required to recognize a custody decree that was obtained by the children's father from a Wisconsin court while the children were in Ohio. *May,* 345 U.S. at 528–529.

¶ 35. Justice Frankfurter, who provided the fifth of five votes in favor of not requiring Ohio to recognize

234

the Wisconsin custody decree, wrote a concurrence in which he limited the court's holding to the specific circumstances before the court:

> What is decided — the only thing the Court decides — is that the Full Faith and Credit Clause does not require Ohio, in disposing of the custody of children in Ohio, to accept, in the circumstances before us, the disposition made by Wisconsin.

*Id.* at 535 (Frankfurter, J., concurring). Accordingly, the dissent seems to stretch *May* beyond its holding.[9]

¶ 36. A review of commentary regarding the constitutionality of relying on the status exception for jurisdiction under the UCCJA reaches varying conclusions. *See* Rhonda Wasserman, *Parents, Partners, and Personal Jurisdiction,* 1995 U. Ill. L. Rev. 813, 816 n.15 (listing commentary on each side of the issue). Some commentators have determined that the UCCJA's reliance on the status exception passes constitutional muster. *See e.g.,* Anthony Dorland, *Civil Procedure-Orders for Child Protection and Nonresident Defendants: The UCCJA Applies and Minimum Contacts are Unnecessary,* 25 Wm. Mitchell L. Rev. 965 (1999); Brigitte M. Bedenheimer & Janet Neeley-Kvarme, *Jurisdiction over Child Custody and Adoption After Shaffer and Kulko,* 12 U.C. Davis L. Rev. 229, 240–41 (1979). Others

---

[9] The dissent lists *Vernon R. v. Elizabeth V.,* 991 P.2d 986 (N.M. 1999), and *In the Interest of John Doe,* 926 P.2d 1290 (Haw. 1996), as requiring "minimum contacts" for the establishment of personal jurisdiction over non-resident defendants in termination of parental rights cases. Dissent, ¶ 92. Neither of these two cases cites *May* as support. In addition, neither of the cases is inconsistent with our analysis. These cases do not stand for the proposition that "minimum contacts" are required in termination of parental rights cases such as the one before us today.

have concluded that minimum contacts-based personal jurisdiction is necessary notwithstanding the UCCJA. *See e.g.,* Wasserman, *supra* at 818 (concluding that "the status exception should not be used to sanction divorce or child custody proceedings in states that lack in personam jurisdiction over all interested parties").

¶ 37. We agree with the majority of the courts and many of the commentators that have considered the validity of jurisdiction under the UCCJA, that traditional personal jurisdiction is not required in child custody proceedings. We find persuasive the cases and commentary concluding that child custody proceedings under the UCCJA are valid even in the absence of minimum contacts over an out-of-state parent. A contrary determination fails to acknowledge the interests and rights of the child. We also note that while child custody proceedings determine the "status" of children, they also implicate "the right and obligation of the state in its parens patriae role to consider the welfare of the child subject to its jurisdiction and to make a determination that is in the best interests of the child." *Leonard,* 122 Cal. App. 3d at 454.

¶ 38. A conclusion that minimum contacts are necessary for child custody determinations ignores the realities of child custody proceedings and leaves children in the position of Thomas J.R. with no practical forum to have their status adjudicated. A requirement of minimum contacts would necessitate that a child travel to the state in which his or her parent resides. Under the UCCJA, the child would have to reside in the parent's state for six months for that state to have jurisdiction. *See* Wis. Stat. §§ 822.02(5), 822.03(1)(a). In the case of an abandoned child whose parents live in different states, the child might be required to travel to both states to have his or her rights determined.

Custody determinations involving parents living in foreign nations would pose further complications.

¶ 39. Children in the position of Thomas J.R. need a forum in which their status can be determined. Requiring minimum contacts would often make termination of parental rights and the subsequent adoption proceedings impractical or impossible. Such a child would essentially be left in "limbo," unable to have a court adjudicate his or her status.

¶ 40. For these reasons we join the many states that have concluded that the status exception to the general personal jurisdiction requirements, as employed in the UCCJA, provides a basis for the exercise of jurisdiction in a child custody case. Such an exercise of jurisdiction, for reasons more fully set forth below, is consistent with notions of fair play and substantial justice.

## C

¶ 41. Subsection (11) of Wis. Stat. § 801.05 relies on the status exception to provide a basis for jurisdiction in the context of child custody proceedings under the UCCJA, by conditioning jurisdiction not on minimum contacts over the out-of-state parent, but on the parent receiving notice and an opportunity to be heard. It states in part:

> *The effect of any determination of a child's custody shall not be binding personally against any parent or guardian unless the parent or guardian* has been made personally subject to the jurisdiction of the court in the action as provided under this chapter or *has been notified under s. 822.05 as provided in s. 822.12.*

Wis. Stat. § 801.05(11) (emphasis added).

¶ 42. We think that the language of Wis. Stat. § 801.05(11) is clear—it provides that a child custody decree issued by a Wisconsin court is binding on a person outside of Wisconsin provided that (1) the court has personal jurisdiction over the person, or (2) the person received proper notice of the court's exercise of jurisdiction, and was afforded an opportunity to be heard. Our reading of the statute is consistent with the legislative history of § 801.05(11), and with Wisconsin precedent.

¶ 43. The text of Wis. Stat. § 822.12 specifically provides that a child custody decree is binding on out-of-state persons who received sufficient notice of the child custody action and who were afforded the opportunity to be heard:

> A custody decree rendered by a court of this state which had jurisdiction under s. 822.03 binds all parties who have been served in this state or notified in accordance with s. 822.05 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. . . .

Wis. Stat. § 822.12.

¶ 44. The legislative history of § 801.05(11) indicates that the portion of the statute that allows jurisdiction based on notice and opportunity to be heard was enacted in response to the adoption of the UCCJA in Wisconsin. Before the enactment of the UCCJA in Wisconsin, actions for child custody were governed by Wis. Stat. § 247.05(4), which stated in part that:

> [A]n independent action for custody may be commenced in any county of this state in which the child is present. The effect of any determination of a child's custody shall not be binding personally against a defendant parent or guardian unless the defendant has been

238

> made personally subject to the jurisdiction of the court in the action as provided in s. 247.06

Wis. Stat. § 247.05(4) (1973).

¶ 45. Section 247.06 allowed personal jurisdiction over an out-of-state defendant only if the defendant "comes under the court's jurisdiction under s. 247.057." Wis. Stat. § 247.06 (1973). Section 247.057, however, did not apply to independent child custody actions. The effect of these statutes, therefore, was that if the parent could not be served in Wisconsin, then the Wisconsin courts did not have jurisdiction over out-of-state parents for the purposes of independent child custody actions. In 1977, in the first legislative session after Wisconsin adopted the UCCJA, the legislature amended subsection 11 of Wis. Stat. § 801.05(11), previously numbered § 262.05(11), to its current form.[10] In so doing, it allowed jurisdiction based on notice and an opportunity to be heard.

¶ 46. The Wisconsin Court of Appeals has recognized this alternative method of assuming jurisdiction over child custody matters. In *Davidson v. Davidson,* the court did not refer to Wis. Stat. § 801.05(11), but left no doubt that it determined that personal jurisdiction by minimum contacts was not necessarily required in a child custody action under the UCCJA. The court stated: "In a 'custody' proceeding under ch. 822, Stats., jurisdiction over a parent outside the state is acquired by notice given as prescribed in sec. 822.05, Stats." *Davidson v. Davidson,* 169 Wis. 2d 546, 556, 485 N.W.2d 450 (Ct. App. 1992).

---

[10] Wisconsin Stat. § 262.05(11) was renumbered by ch. 157, Laws of 1973.

## D

¶ 47. Having determined that the status exception and Wis. Stat. § 801.05(11) provide a basis for jurisdiction over a person absent minimum contacts,[11] we must examine the statute's requirement of notice of the exercise of jurisdiction, and an opportunity to be heard, and assess them in the context of this case.

¶ 48. Wisconsin Stat. § 822.12 requires that notice of an exercise of jurisdiction be given to out-of-state parties pursuant to § 822.05, which governs the mechanics of giving of notice. Section 822.05 is entitled "Notice to persons outside this state; submission to jurisdiction," and lists the different methods for serving notice of a child custody action on an out-of-state person.[12]

---

[11] Because we have determined that Wis. Stat. § 801.05(11) provided a basis for jurisdiction over a person who received proper notice of the court's exercise of jurisdiction and was afforded an opportunity to be heard, we need not address an alternative argument advanced by the guardian ad litem that § 801.05(2) provides a basis for the exercise of jurisdiction in this case.

[12] Wisconsin Stat. § 822.05(1) provides:

(1) Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be:

(a) By personal delivery outside this state in the manner prescribed for service of process within this state;

(b) In the manner prescribed by the law of the place in which the service is made for service of process in that place in an action in any of its courts of general jurisdiction;

(c) By any form of mail addressed to the person to be served and requesting a receipt; or

(d) As directed by the court, including publication, if other means of notification are ineffective.

¶ 49. In this case, there is no dispute regarding compliance with the notice requirements of § 822.05. In fact, Robert received actual notice of the proceedings, and successfully requested that the court delay action on the petition to terminate until he was released from prison.

¶ 50. There also is no dispute that Robert was given an opportunity to be heard, as required by § 822.12. Section 822.12 explains that if in addition to notice under § 822.05, a party is afforded an opportunity to be heard, "a custody decree rendered by a court of this state which had jurisdiction under s. 822.03" is binding on the party. Robert was afforded an opportunity to be heard under § 822.05, and participated by ·telephone in the trial and another hearing.

¶ 51. We conclude that in this case Robert received notice and an opportunity to be heard as required by Wis. Stat. § 822.12. Statutory compliance alone, however, does not render an exercise of jurisdiction constitutional. By requiring an opportunity to be heard, in addition to the notice requirement under § 822.05, section 822.12 codifies a recognition that child custody determinations, especially those involving parents or guardians in different states, involve important rights and require additional procedural protections. Safeguards must be in place to protect against potential abuses.

¶ 52. As noted above, the Due Process Clause requires that any exercise of jurisdiction comport with " 'traditional notions of fair play and substantial justice.' " *Burnham,* 495 U.S. at 622 (quoting *International Shoe,* 326 U.S. at 316). A determination of the validity of an exercise of jurisdiction based on minimum con-

241

tacts or some other jurisdictional rule requires an evaluation of the reasonableness of the exercise of jurisdiction. *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 113 (1987); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980). Reasonableness depends on several factors, including: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interest of the interstate judicial system in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies. *Id.* To determine whether the exercise of jurisdiction in this case satisfied due process, we will examine these factors, first in terms of the UCCJA generally, and then in terms of this case.

¶ 53. The first of the five *Asahi* factors is the burden on the defendant. Being inconvenienced by an action in another state does not necessarily mean that the party's due process rights are violated. *See McGee v. Int'l Life Ins. Co.,* 355 U.S. 220 (1957). Moreover, the UCCJA contains provisions that help alleviate any burden on an out-of-state resident. Section 822.11(3) provides that a court may require another party to pay the travel and other necessary expenses of an out-of-state party that wishes to appear personally before the court if the court determines it is proper and just under the circumstances. Section 822.07 also allows an out-of-state party to move the court to dismiss the action on the grounds of inconvenient forum. Finally, under Wis. Stat. § 822.18, any party "may adduce testimony of witnesses, including parties and the child, by deposition or otherwise, in another state."

¶ 54. The second factor under *Asahi* is the interest of the forum state. There is little question that Wisconsin has an interest under its parens patriae power to protect the best interests of children residing in the state. *See State v. B.S.,* 162 Wis. 2d 378, 391, 469 N.W.2d 860 (Ct. App. 1991). "As parens patriae, the State's goal is to provide the child with a permanent home." *Santosky v. Kramer,* 455 U.S. 745, 766 (1982). The UCCJA section on jurisdiction, Wis. Stat. § 822.03(1), evidences the importance to a state of protecting children who live in the state. It explains that factors for consideration in determining which state should have jurisdiction over a child custody matter include the home state of the child, presence of the child in the state, and the best interests of the child. Wis. Stat. § 822.03(1).

¶ 55. The third factor under *Asahi* is the plaintiff's interest in obtaining relief. In cases governed by the UCCJA, the plaintiff is typically either the child in question, or a parent or guardian on behalf of the child. Such a plaintiff has a very strong interest in obtaining relief in the form of a custody decree or a termination of parental rights. The UCCJA is not a statute under which custody is determined or parental rights are terminated. It is simply the means under which, when an order determining custody or terminating parental rights is appropriate, the court may exercise jurisdiction so that it may issue such an order.

¶ 56. The fourth factor under *Asahi* is the interest of the interstate judicial system in obtaining the most efficient resolution of controversies. Wisconsin Stat. § 822.01(1) makes clear that efficient resolution of controversies is a primary objective of the UCCJA. One purpose of the UCCJA is to "avoid jurisdictional competition and conflict with courts of other states." Wis.

Stat. § 822.01(1)(a). Another is to "promote cooperation with the courts of other states." Wis. Stat. § 822.01(1)(b). Still another is to "assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and family have the closest connection and where significant evidence concerning the child's care, protection, training, and personal relationships is most readily available." Wis. Stat. § 822.01(1)(c).

¶ 57. The final factor under *Asahi* is the shared interest of the several states in furthering fundamental social policies. The adoption of the UCCJA or the UCCJEA in each state demonstrates the shared interests states have in resolving child custody matters. The prefatory note to the UCCJA further explains this interest:

> Underlying the entire Act is the idea that to avoid the jurisdictional conflicts and confusions which have done serious harm to innumerable children, a court in one state must assume major responsibility to determine who is to have custody of a particular child; that this court must reach out for the help of courts in other states in order to arrive at a fully informed judgment which transcends state lines and considers all claimants, residents and nonresidents, on an equal basis and from the standpoint of the welfare of the child. If this can be achieved, it will be less important *which* court exercises jurisdiction but that courts of the several states involved act in partnership to bring about the best possible solution for a child's future.

UCCJA Prefatory Note, 9 U.L.A. 264–65 (1999) (emphasis in original).

██

¶ 58. We conclude after considering all of the factors that the UCCJA generally provides sufficient

due process protections to make reasonable an exercise of jurisdiction over an out-of-state parent. Our conclusion does not end our analysis. We must also consider whether on the facts of this case, the exercise of jurisdiction over Robert complied with traditional notions of fair play and substantial justice, and was reasonable in terms of the five *Asahi* factors.

¶ 59. We begin with the burden placed on Robert by the Wisconsin court's exercise of jurisdiction. Robert does not allege that any inability to appear personally violated his due process rights, or contend that the Lafayette County Circuit Court's exercise of jurisdiction was unreasonably burdensome.

¶ 60. When Robert was initially served with the petition for termination he asked that Tammie be ordered to pay his costs, or alternatively for an extension until he was released from prison. The court granted the extension request. Robert did not appear personally at the termination trial, but he was represented by counsel and appeared by telephone. Robert was employed in Utah at the time of the trial, and he does not allege that he was unable to appear. His earlier request for payment of his costs demonstrates that he understood that if appearing would pose an undue economic hardship, he could ask that his costs be paid.

¶ 61. In considering the next two factors, we note that Wisconsin's exercise of jurisdiction was in the interests of Tammie and Thomas and in the interest of the State of Wisconsin. Tammie filed the petition for termination on behalf of Thomas. Thomas testified that he wanted Robert's parental rights to be terminated, and that he wanted to be adopted. Thomas is present in Wisconsin, and by virtue of his having lived in Wisconsin with his mother for more than six months, it is his home state under Wis. Stat. § 822.02(5), and is clearly

the state with which he has maximum contacts. Wisconsin has an interest in the welfare of Thomas.

¶ 62. Moreover, the circuit court determined that termination was in Thomas' best interest. Tammie, Thomas, and Wisconsin all had strong interests in Wisconsin exercising jurisdiction, especially after Arizona declined jurisdiction. If Wisconsin did not exercise jurisdiction, Thomas would have been left without a forum. We cannot conclude that the exercise of jurisdiction was unreasonable.

¶ 63. As to the remaining two factors, we note initially that the termination proceeding in this case followed the procedures set out in the UCCJA. The state that exercised jurisdiction was the one with the strongest ties to the child, to the child's mother, and to significant information about the child. It therefore was the state for which the exercise of jurisdiction was most appropriate. Wis. Stat. § 822.03(1)(a)–(c). The Lafayette County Circuit Court allowed Robert and Tammie to petition the Arizona Superior Court to determine whether Arizona would exercise or decline to exercise jurisdiction. The Arizona court determined that it could not exercise jurisdiction over a termination proceeding because Thomas was not present in the state, and therefore declined to exercise jurisdiction. After the Arizona court declined to exercise jurisdiction, there was no question that Wisconsin had jurisdiction over the matter. Its exercise of that jurisdiction was not unreasonable.

¶ 64. We conclude that the UCCJA provides sufficient due process protections to make reasonable an exercise of jurisdiction over an out-of-state parent. We further conclude that in this case, Robert was afforded notice, an opportunity to be heard either in person or

246

telephonically, and an opportunity to petition the Arizona court to exercise jurisdiction over the matter. Robert availed himself of all of these procedures. Under these circumstances, we conclude that Wisconsin's exercise of jurisdiction over Robert complied with traditional notions of substantial justice and fair play and did not violate his rights to due process.

¶ 65. We note, however, that in reversing the circuit court order terminating Robert's parental rights, the court of appeals did not address the substance of another due process challenge that Robert raised. Robert asserted that "continuing denial of periods of physical placement," which was the ground for his Wisconsin termination, is not a ground for termination under Arizona law. He further advanced that he was not warned that his parental rights could be subject to termination in Wisconsin if he failed to challenge the child custody decree issued in Arizona. The circuit judge to whom the case was initially assigned denied Robert's motion to dismiss, determining that "warnings are not a prerequisite to a termination action where the Respondent has been denied placement in a divorce judgment." The circuit judge to whom the case was later assigned recognized that the Arizona court order did not contain the notice required under Wis. Stat. § 48.356, but suggested that Robert had waived the issue.

¶ 66. Robert raised this issue to the court of appeals, but the court did not address the substance of the argument because it reversed the circuit court order, finding that the court had no jurisdiction.[13] *See*

[13] The court of appeals noted in footnote 6 as follows: "Because we have concluded that the circuit court lacked personal jurisdiction over Robert and that personal jurisdiction

*Tammie J.C. v. Robert T.R.*, No. 01–2787, unpublished slip op. (Wis. Ct. App. January 10, 2002). Robert did not raise the issue in his petition to this court, and the parties neither briefed nor argued it here. We therefore are unable to address whether the termination of Robert's parental rights afforded Robert due process. Additionally, Robert raised other issues in the court of appeals, involving Equal Protection and the circuit court's exercise of discretion, that were not decided by the court of appeals and that were neither briefed nor argued in this court. It will be necessary for the court of appeals to address these issues.

## IV

¶ 67. In summary, we conclude that the status exception to the general personal jurisdiction requirements, as employed in the Uniform Child Custody Jurisdiction Act, provides a basis for the exercise of jurisdiction in a child custody case. Such an exercise of jurisdiction is consistent with notions of fair play and substantial justice. We also conclude that Wis. Stat. § 801.05(11), which references the UCCJA, provides sufficient due process protection to out-of-state parents based on notice and an opportunity to be heard. Accordingly, we reverse the court of appeals and remand the case for a determination on the remaining issues previously raised in that court, but not briefed or argued here.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the court of appeals.

was necessary before the court could terminate his parental rights, we do not reach the additional bases for reversal put forth by Robert." Unpublished slip op. at ¶ 16 n.6 (citations omitted).

¶ 68. JON P. WILCOX, J. *(concurring)*. I agree with the court's reasoning and conclusions. I write separately only to address the dissent's assertion that this court's decision in *Evelyn C.R. v. Tykila S.*, 2001 WI 110, 246 Wis. 2d 1, 629 N.W.2d 768, recognizing parental rights as fundamental and acknowledging the severity of termination proceedings, is somehow incompatible with the court's finding of jurisdiction in this case. I believe the principles in *Evelyn C.R.* and other cases like it are compatible with this case. For the policy reasons relating to the State's and the child's interests discussed by the court in ¶¶ 37–39, cases such as the one before us present a situation where application of the recognized status exception to minimum contacts doctrine makes sense.

¶ 69. In *Evelyn C.R.*, 246 Wis. 2d 1, ¶¶ 21, 26, 36, this court found that a circuit court erred when it entered a default judgment on the issue of abandonment in a proceeding for termination of parental rights without first fulfilling its duty to take evidence sufficient to support a finding, by clear and convincing evidence, that the mother had abandoned the child. However, we then concluded that the error was harmless because the circuit court remedied the situation by taking appropriate evidence before terminating the parent's rights. *Id.*, ¶¶ 33–36. In finding that the circuit court erred, this court acknowledged that parental rights are fundamental. *Id.*, ¶ 20. We also noted that termination proceedings are of a "severe nature," and due process requires that there be proof, by clear and convincing evidence, that termination is appropriate, before parental rights may be terminated. *Id.*, ¶ 21.

¶ 70. Nonetheless, acknowledging that a right is fundamental does not mean it is absolute and need never give way when other interests are at stake. The

issue in the present case is jurisdiction, whether a Wisconsin court has jurisdiction to go forward with a termination proceeding at all. Although parental rights are fundamental and the effects of termination severe, the jurisdiction issue also involves other important interests, specifically those of the child and the State, that must be considered in the equation. The dissent argues that consideration of the "fundamental nature and importance of parental rights" is lacking in the majority opinion. Dissent, ¶ 76. However, I submit that the recognition of parental rights as fundamental should not be determinative on whether the status exception to personal jurisdiction is applicable. As one court recently explained:

> The fact that parental rights have been designated "fundamental liberty interest[s]," *Santosky v. Kramer,* 455 U.S. 745, 758–59 (1982), does not alter our analysis. Cases dealing with status often involve a fundamental liberty interest. Nevertheless, the United States Supreme Court has allowed courts to exercise jurisdiction in such cases where standards of fairness are not violated.

*D.A. v. State,* 2002 UT 127, ¶ 31, 63 P.3d 607. As this court discussed in its opinion, we have determined that these standards of fairness have been met in the present case. *See* majority op., ¶¶ 47–64. The non-resident parent was given ample notice and an opportunity to be heard, and the balance of the *Asahi* factors—which examine the interests of the parent, the child, and the State—tips in favor of jurisdiction. *Id.*

¶ 71. We note in this decision that if the circuit court has no jurisdiction in cases such as this, the result is often a child caught in "jurisdictional limbo." Majority op., ¶ 15. This is a significant concern, one that the Uniform Child Custody Jurisdiction Enforcement Act

250

(UCCJA) was enacted specifically to address. Majority op., ¶ 29. I agree with the court's conclusion that the UCCJA allows Wisconsin to take jurisdiction in this case under the status exception. I also agree that sufficient due process protections were provided to the non-resident parent. In circumstances such as these, where the issue is jurisdiction and the conflict is between parental rights and the State's interest in protecting the child's best interests, it is appropriate to apply the UCCJA.

¶ 72. *Evelyn C.R.* did not hold that default judgment in termination cases could not occur at all. It simply held that a court must take sufficient evidence before entering such a judgment. *See Evelyn C.R.*, 246 Wis. 2d 1, ¶ 36. The present case allows an alternative basis for jurisdiction, but only where sufficient due process protections are in place. As the majority notes, whether the basis for jurisdiction over a person is minimum contacts or some other means, the applicable due process standard is the same. Majority op., ¶ 24. Today's holding is consistent with our recognition of the importance of parental rights, but it provides a balance such that jurisdiction is allowed where the balance of interests at stake indicates that the child's interests in getting a court determination and the State's interest in protecting the child's interests are in danger.

¶ 73. The unique set of circumstances involved in a case such as Thomas J.R.'s allows Wisconsin to take jurisdiction under the status exception to personal jurisdiction. This determination is in no way intended to minimalize the importance of parental rights. The status exception has been a long-accepted exception to personal jurisdiction and provides an alternative means of jurisdiction under very limited circumstances. I therefore see no conflict between this court's recogni-

tion of a fundamental right and its decision to allow jurisdiction under the limited circumstances presented here.

¶ 74. DIANE S. SYKES, J. *(dissenting).* I respectfully dissent. The majority concludes that the due process personal jurisdiction prerequisite of "minimum contacts" with the forum state pursuant to *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945), is not applicable in termination of parental rights cases. Majority op., ¶ 37. The majority reaches this conclusion by characterizing termination of parental rights as a "status" determination not subject to "minimum contacts" personal jurisdiction requirements. Majority op., ¶ 40. The majority also concludes that the Uniform Child Custody Jurisdiction Act (UCCJA), Wis. Stat. § 822.01–.25, read together with Wis. Stat. § 801.05(11), constitutes a sufficient basis for personal jurisdiction over a non-resident defendant who has no contacts with Wisconsin, provided that notice and an opportunity to be heard are afforded. Majority op., ¶¶ 37–40.

¶ 75. The majority places substantial emphasis on the interests and needs of the child, the parens patriae interests of the forum state, and the interest in avoiding the practical and very human problems associated with the "jurisdictional limbo" that can occur when biological parents reside in different states and grounds for termination of parental rights exist. *Id.* I agree that these are strong justifications for the jurisdictional rule the majority adopts. However, the majority has not evaluated these justifications against the interest that occupies the other side of the scale: a parent's fundamental and constitutionally protected interest in the parent-child relationship.

¶ 76. I recognize that the extreme facts of this case are not such as would induce a court to place much value on this particular non-resident father's rights or interests, particularly as against the compelling nature of this child's situation. But resolving the question of whether due process requires "minimum contacts" with the forum state before a non-resident's parental rights are terminated requires that we consider the funda-mental nature and importance of parental rights in general, which the majority has not done. Resolving the jurisdictional question presented here also requires consideration of the United States Supreme Court precedent most closely on point, *May v. Anderson,* 345 U.S. 528 (1953), which the majority mentions only summarily, in response to this dissent.

¶ 77. The United States Supreme Court has "recognized on numerous occasions that the relation-ship between parent and child is constitutionally pro-tected." *Quilloin v. Walcott,* 434 U.S. 246, 255 (1978). Termination of parental rights implicates "a fundamen-tal liberty interest protected by the Fourteenth Amend-ment." *Santosky v. Kramer,* 455 U.S. 745, 753 (1982). This fundamental liberty interest "does not evaporate simply because [parents] have not been model parents or have lost temporary custody of their child to the State." *Id.* "When the State moves to destroy weakened familial bonds, it must provide the parents with funda-mentally fair procedures." *Id.* at 753–54.

¶ 78. This court has characterized parental rights as among the most fundamental of human rights. *Evelyn C.R. v. Tykila S.,* 2001 WI 110, ¶ 20, 246 Wis. 2d 1, 629 N.W.2d 768. More specifically:

> Terminations of parental rights affects some of parents' most fundamental human rights. *T.M.F. v.*

*Children's Serv. Soc'y,* 112 Wis. 2d 180, 184, 332 N.W.2d 293 (1983). At stake for a parent [in a termination of parental rights action] is his or her "interest in the companionship, care, custody, and management of his or her child." *Id.* Further, the permanency of termination orders "work[s] a unique kind of deprivation. In contrast to matters modifiable at the parties' will or based on changed circumstances, termination adjudications involve the awesome authority of the State to destroy permanently all legal recognition of the parental relationship." *M.L.B. v. S.L.J.,* 519 U.S. 102, 127–28 (1996)(citations and quotations omitted). For these reasons, "parental termination decrees are among the most severe forms of state action." *Id.*

*Id.*

¶ 79. The due process clause of the Fourteenth Amendment requires "that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *International Shoe,* 326 U.S. at 316 (citations omitted, emphasis in original).

¶ 80. In *Shaffer v. Heitner,* 433 U.S. 186, 212 (1977), the United States Supreme Court held that "all assertions of state-court jurisdiction [over non-resident defendants] must be evaluated according to the standards set forth in *International Shoe* and its progeny," that is, on the basis of the quality and quantity of the non-resident's contacts with the forum state. In a footnote, however, the Court said that it was not suggesting "that jurisdictional doctrines other than those discussed in text, such as the particularized rules governing adjudications of status, are inconsistent with the standard of fairness [in *International Shoe*]." *Shaffer,* 433 U.S. at 208 n.30. The majority focuses its

254

analysis on this footnote, and its reference to the so-called "status exception" to the "minimum contacts" personal jurisdiction requirement of *International Shoe*.

¶ 81.　However, in a pre-*Shaffer* case with important implications for the issue presented here, the Supreme Court held that a child custody decree against a non-resident parent with no presence in or contact with the forum state is not entitled to full faith and credit enforcement in another state. *May v. Anderson*, 345 U.S. 528 (1953). The issue in *May* was stated as follows:

> The question presented is whether, in a habeas corpus proceeding attacking the right of a mother to retain possession of her minor children, an Ohio court must give full faith and credit to a Wisconsin decree awarding custody of the children to their father when that decree is obtained by the father in an ex parte divorce action in a Wisconsin court which had no personal jurisdiction over the mother. For the reasons hereafter stated, our answer is no.

*Id.* at 528–29.

¶ 82.　The Court noted that its prior decisions in *Estin v. Estin*, 334 U.S. 541 (1948), and *Kreiger v. Kreiger*, 334 U.S. 555 (1948), had distinguished, for purposes of jurisdictional analysis, between a decree of divorce and the extinguishment of the right to support:

> In Estin v. Estin, supra, and Kreiger v. Kreiger, supra, this Court upheld the validity of a Nevada divorce obtained ex parte by a husband, resident in Nevada, insofar as it dissolved the bonds of matrimony. At the same time, we held Nevada powerless to cut off, in that proceeding, a spouse's right to financial support under the prior decree of another state. *In the instant case, we recognize that a mother's right to custody of her*

255

*children is a personal right entitled to at least as much protection as her right to alimony.*

*May,* 345 U.S. at 533–34 (emphasis added.)

¶ 83. Noting that "[r]ights far more precious to [the mother] than property rights will be cut off if she is to be bound by the Wisconsin award of custody," the Court held that "where [a parent] is neither domiciled, resident nor present" in the forum state, that state may not "cut off her immediate right to the care, custody, management and companionship of her minor children *without having jurisdiction over her in personam." Id.* at 533 (emphasis added). The majority in *May* also dismissed any argument based upon the "legal domicile" of the children (as opposed to their residence or presence): "We find it unnecessary to determine the children's legal domicile because, even if it be with their father, that does not give Wisconsin, certainly as against Ohio, *the personal jurisdiction that it must have in order to deprive their mother of her personal right to their immediate possession." Id.* at 534 (emphasis added).

¶ 84. In a concurring opinion, Justice Frankfurter characterized the decision of the Court as follows: "What is decided—the only thing the Court decides—is that the Full Faith and Credit Clause does not require Ohio, in disposing of the custody of children in Ohio, to accept, in the circumstances before us, the disposition made by Wisconsin." *Id.* at 535 (Frankfurter, J., concurring.) Justice Frankfurter went on to explain his position:

> Property, personal claims, and even the marriage status . . . generally give rise to interests different from those relevant to the discharge of a State's continuing responsibility to children within her borders. Children

have a very special place in life which law should reflect. Legal theories and their phrasing in other cases readily lead to fallacious reasoning if uncritically transferred to determination of a State's duty toward children. . . . [T]he child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time. Reliance on opinions regarding out-of-State adjudications of property rights, personal claims or the marital status is bound to confuse analysis when a claim to the custody of children before the courts of one State is based on an award previously made by another State. Whatever light may be had from such opinions, they cannot give conclusive answers.

*Id.* at 536 (Frankfurter, J., concurring.)

¶ 85. Despite these qualifications, Justice Frankfurter did not merely concur in the majority's result, but, rather, joined the majority opinion.[1] *Id.* at 535. His separate opinion elaborates on the special nature of parental rights claims as distinct from property claims, personal claims, and claims pertaining to marital status.

¶ 86. Although *May* involved a collateral challenge to the personal jurisdictional underpinnings of a child custody decree under full faith and credit, rather than a direct jurisdictional challenge as in this case, it is nevertheless the Supreme Court's most closely applicable statement of the law on the personal jurisdiction question presented here.[2] And although it was a cus-

---

[1] In any event, one justice did not participate, so the case was decided on a 5–3 vote, not a mere plurality. *May v. Anderson*, 345 U.S. 528, 535 (1953).

[2] The United States Supreme Court has also held that a state court's assertion of personal jurisdiction in an action for

tody dispute rather than an action to terminate parental rights, *May*'s reasoning applies with even greater force in the context of termination of parental rights, in which much more than just custody is at stake. It is unusual, therefore, that the majority addresses *May* only summarily, in response to this dissent.

¶ 87. The Supreme Court has not revisited *May*, but it has not overruled or circumscribed its holding either, nor has the Court taken up the question of whether child custody or termination of parental rights cases fall within the status exception to *International Shoe* that was held in reserve by the footnote in *Shaffer*. The Court could have overruled or in some way addressed the continuing vitality of *May* in its reference to the status exception in the *Shaffer* footnote, but it did not. We cannot, therefore, simply ignore *May*'s conclusion about the jurisdictional validity of a child custody decree entered without personal jurisdiction over a non-resident parent.[3]

---

child support against a "nonresident, nondomiciliary parent of minor children domiciled within the State" violates due process if the non-resident parent has insufficient "minimum contacts" with the forum state under *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). *Kulko v. Superior Court of California,* 436 U.S. 84, 86 (1978). The Court's holding in *Kulko* was based on the long-standing rule "that a valid judgment imposing a personal obligation in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant," and that "personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant . . . [and] a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum." *Id.* at 91 (citations omitted). *See also,* majority op., ¶ 25 n.5.

[3] *May* is cited but not discussed in *Kulko,* 436 U.S. at 97, a post-*Shaffer* case.

¶ 88. In its summary rejection of *May,* the majority implies that the case is no longer relevant in light of *Shaffer.* Majority op., ¶ 32. *May,* however, has been cited with approval by the Supreme Court in a post-*Shaffer* termination of parental rights case, *Lassiter v. Department of Social Services of Durham County, N.C.,* 452 U.S. 18, 27 (1981) ("Here the State has sought not simply to infringe upon [the parental] interest but to end it. If the State prevails, it will have worked a unique kind of deprivation.") (citing *May,* 345 U.S. at 533).

¶ 89. Following *Lassiter,* the Court decided *Santosky,* which required the middle "clear and convincing evidence" burden of proof in termination of parental rights cases. There, the Court held that "state intervention to terminate the relationship between [a parent] and [a] child must be accomplished by procedures meeting the requisites of the Due Process Clause" and that "persons faced with forced dissolution of their parental rights" have a "critical need" for the procedural protections of the due process guarantee. *Santosky,* 455 U.S. at 753. The Court reiterated that termination of parental rights implicates a fundamental liberty interest, and noted that "[t]he fact that important liberty interests" of the child and the other parent may also be implicated "does not justify" a denial of constitutionally adequate procedures. *Id.* at 754 n.7.

¶ 90. Indeed, the majority recognizes that the Supreme Court "has made clear" that "subjects such as alimony and child support are not covered by the status exception." Majority op., ¶ 25 n.5 (citing *Kulko v. Superior Court,* 436 U.S. 84, 91–92 (1978)). *May* held that the right to custody of children is "a personal right entitled to at least as much protection as [the] right to

alimony." *May,* 345 U.S. at 533–34. Termination of parental rights actions, therefore, cannot be covered by the status exception.

¶ 91. The majority asserts that "[m]ost courts that have considered the validity of jurisdiction under the UCCJA have determined that the status exception applies to child custody cases under the UCCJA, and that personal jurisdiction based on minimum contacts is not required." Majority op., ¶ 30. This appears to be true for child custody cases, which those courts that have addressed the matter have quite readily characterized as pure status determinations for purposes of the *Shaffer* footnote.

¶ 92. The majority makes a similar assertion regarding personal jurisdiction over non-resident defendants in termination of parental rights cases, as distinct from child custody cases. Majority op., ¶ 32. In this area, however, the consensus, and proper analysis, are less clear. Five states—Alaska, Kansas, Tennessee, Texas, and Utah—have applied the status exception to conclude that "minimum contacts" were not necessary in termination of parental rights cases. *S.B. v. State of Alaska,* 61 P.3d 6 (Alaska 2002); *In re M.L.K.,* 768 P.2d 316 (Kan. App. 1989); *In re Adoption of Copeland,* 43 S.W.3d 483 (Tenn. App. 2000); *In re M.S.B.,* 611 S.W.2d 704 (Tex. App. 1980); *D.A. v. State of Utah,* 63 P.3d 607 (Utah 2002). Two states—New Mexico and Hawaii—have declined to adopt the status exception and have required "minimum contacts" for the establishment of personal jurisdiction over non-resident defendants in termination of parental rights cases. *Vernon R. v. Elizabeth V.,* 991 P.2d 986 (N.M. 1999) (leaving open the possibility of recognizing a UCCJA-based status exception in a custody or adoption-contemplation termination case); *In the Interest of John Doe,* 926 P.2d 1290

(Haw. 1996). Two additional states—Arizona and Montana—have asserted personal jurisdiction in the absence of "minimum contacts" without discussing the status exception. *Wenz v. Schwartze,* 598 P.2d 1086 (Mont. 1979); *In the Matter of Appeal in Maricopa County, Juvenile Action,* 543 P.2d 454 (Ariz. 1975).

¶ 93. And although custody determinations might be more readily characterized as status determinations than parental rights terminations, at least two courts have cited *May* and concluded that child custody determinations require "minimum contacts" personal jurisdiction over a non-resident parent. *In re Dean,* 447 So.2d 733, 735 (Ala. 1984); *Pasqualone v. Pasqualone,* 406 N.E.2d 1121, 1125–1126 (Ohio 1980).

¶ 94. I recognize that in the case of *In the Interest of A.E.H.,* 161 Wis. 2d 277, 468 N.W.2d 190 (1991), this court stated that termination of parental rights cases constitute "custody determinations" within the meaning of the UCCJA. But *A.E.H.* addressed the question of a Wisconsin court's competency over a termination determination under the UCCJA vis-à-vis the court of another state; the case did not address the requirements for personal jurisdiction over non-resident parents. *Id.* at 298–301. The court of appeals in *Davidson v. Davidson,* 169 Wis. 2d 546, 556, 485 N.W.2d 450 (Ct. App. 1992) held that in a child custody case under the UCCJA (not a parental rights termination case) due process is satisfied when "the out-of-state parent is given notice and an opportunity to be heard in the manner provided by the UCCJA." This, however, was a one-sentence conclusory holding without any analysis whatsoever.

¶ 95. In contrast, this court has concluded that in a paternity action, the assertion of personal jurisdiction over a non-resident defendant without sufficient mini-

mum contacts with the state violates due process. *State ex rel. N.R.Z. v. G.L.C.*, 152 Wis. 2d 97, 109, 447 N.W.2d 533 (1989). Similarly, the court of appeals has held that the UCCJA does not supply a constitutionally sufficient basis for the assertion of personal jurisdiction over a non-resident defendant in a paternity action in the absence of "minimum contacts" with this state. *Paula M.S. v. Neal A.R.*, 226 Wis. 2d 79, 88, 593 N.W.2d 486 (Ct. App. 1999). I do not see how due process— "traditional notions of fair play and substantial justice" —distinguishes between an action to *establish* paternity and an action to *terminate* paternity, except perhaps that the former may result in the imposition of financial obligations. Actions to terminate parental rights, no less than paternity actions, require more than mere notice and an opportunity to be heard before extra-territorial personal jurisdiction may be constitutionally asserted.

¶ 96.　Given the fundamental and constitutionally protected nature of parental rights and the permanency of a termination adjudication, and with *May* as the Supreme Court's most relevant pronouncement on the issue, I cannot agree that the assertion of personal jurisdiction in this termination of parental rights case over a non-resident parent who has had no contact with Wisconsin is constitutionally permissible. While there may be instances of jurisdictional necessity in this context, such as an abandoned child whose biological parents cannot be located, this is not such a case, and we should leave such questions for a case that properly presents them. Majority op., ¶ 38.

¶ 97.　Unlike a child custody determination, which can be modified, termination of parental rights is final, severs permanently all legal recognition of the parent-child relationship, and is therefore "among the

most severe forms of state action." *Evelyn C.R.*, 246 Wis. 2d 1, ¶ 20 (quoting *M.L.B. v. S.L.J.*, 519 U.S. 102, 127–28 (1996)). Accordingly, the rights and interests at stake for the non-resident parent are at least as significant as those in an action to determine paternity (*State ex rel. N.R.Z.*), alimony, or child support (*Kulko*). I agree with the court of appeals that the personal jurisdictional requirement of "minimum contacts" under *International Shoe* is applicable here. *See In re Termination of Parental Rights to Thomas J.R.*, 2002 WI App 56, 251 Wis. 2d 483, 640 N.W.2d 566.

¶ 98. Termination of Robert T.R.'s parental rights may indeed be in Thomas J.R.'s best interests, in order to clear the way for his adoption by his step-father. But before the merits of the question can be reached, there must be a constitutionally adequate basis for the assertion of personal jurisdiction over his non-resident father, and that is missing here. I would affirm the court of appeals.